476 A.2d 22

**Allen H. SMITH, Appellant,**

v.

**Rees GRIFFITHS and Liverant, Senft & Cohen.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1983.

Filed April 19, 1984.

Petition for Allowance of Appeal Denied Aug. 27, 1984.

420

Marc Roberts, York, for appellant.

Patricia Ann Butler, York, for appellees.

Before WICKERSHAM, WIEAND and CERCONE, JJ.

WIEAND, Judge:

Allen H. Smith, an attorney, filed a civil action against Rees Griffiths, the lawyer representing Smith's wife in a marital action. He averred in his complaint (1) that he had been defamed by his wife's lawyer and (2) that the lawyer had caused injury to him by giving Smith's wife incorrect legal advice. The trial court sustained preliminary objections in the nature of a demurrer and entered judgment in favor of Griffiths. An appeal from this judgment requires that we examine and define (1) the nature of the privilege which protects defamatory communications made by an

attorney on behalf of a client and (2) the duty, if any, owed by a lawyer to an adverse party to a dispute.[1]

Appellant's complaint contains three counts. The first two counts allege causes of action respectively for libel and slander. The first count complains of two letters written by Griffiths to Judson E. Ruch, Esquire, a master appointed by the court to hear Mrs. Smith's petition for alimony, alimony pendente lite, counsel fees and costs. The representations in these letters were that Smith had not paid counsel fees and expenses as previously agreed; had leased the marital domicile and appropriated the rentals to his own use; and had failed to pay real estate taxes on the marital property, as a result of which the property was to be listed for tax sale. The second count in the complaint avers that Griffiths slandered Smith by oral statements to the effect that Mrs. Smith was distraught because appellant had failed to pay a support order previously entered by the Honorable James E. Buckingham. These statements were allegedly made in the judicial chambers of Judge Buckingham during an unrelated pre-trial conference attended by Smith and Griffiths. Preliminary objections filed to the complaint contended that the communications were privileged and, therefore, not actionable.

"[W]hen considering preliminary objections in the nature of a demurrer, we accept as true all well-pleaded material facts in the complaint, as well as all inferences reasonably deducible therefrom.... [P]reliminary objections should be sustained and a complaint dismissed only in cases that are clear and free from doubt.... [I]t must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff." *DeSantis v. Swigart*, 296 Pa.Super. 283, 286, 442 A.2d 770, 771 (1982), quoting *Donnelly v. DeBourke*, 280 Pa.Super. 486, 489–490, 421 A.2d 826, 828 (1980) (overruled on other grounds). Accord: *Stein v.*

1. The complaint also named as a party the law firm with which Rees Griffiths was associated. The decision which we reach makes it unnecessary to determine whether or to what extent principles of respondeat superior are applicable to intentional torts committed by members and/or associates of law firms.

*Richardson,* 302 Pa.Super. 124, 136, 448 A.2d 558, 564 (1982); *Duffee v. Judson,* 251 Pa.Super. 406, 409, 380 A.2d 843, 844–845 (1977).

 The law is now well established that "[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse." *Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 323, 275 A.2d 53, 56 (1971). Accord: *Greenberg v. Aetna Insurance Co.,* 427 Pa. 511, 514, 235 A.2d 576, 577 (1967); *Barto v. Felix,* 250 Pa.Super. 262, 266, 378 A.2d 927, 929 (1977). This privilege exists in favor of counsel so that he will be permitted to represent his client's interests to the fullest extent. *Binder v. Triangle Publications, Inc., supra* 442 Pa. at 324, 275 A.2d at 56. All persons involved in a judicial proceeding are encouraged by the privilege to speak frankly and argue freely without danger or concern that they may be required to defend their statements in a later defamation action. See: *Yearsley v. Franklin Lamp Manufacturing Co.,* 97 Pa.Super. 538, 540 (1929); *Barto v. Felix, supra* 250 Pa.Super. at 278, 378 A.2d at 935 (Spaeth, J. dissenting); Restatement (Second) of Torts § 586 (comment a). Although it is possible that "[w]rong may at times be done to a defamed party, ... it is *damnum absque injuria.* The inconvenience of the individual must yield to a rule for the good of the general public." *Yearsley v. Franklin Lamp Manufacturing Co., supra,* quoting *Kemper v. Fort,* 219 Pa. 85, 94, 67 A. 991, 995 (1907). Whether a privilege exists is a question of law for the court. *Montgomery v. Dennison,* 363 Pa. 255, 265, 69 A.2d 520, 525 (1949); *Rankin v. Phillippe,* 206 Pa.Super. 27, 31, 211 A.2d 56, 58 (1965); *Medico v. Time, Inc.,* 509 F.Supp. 268, 272 (1980), *aff'd,* 643 F.2d 134, *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981). Where the question of the relevancy and pertinency of matters communicated is to be inquired into, all reasonable doubt must be resolved in favor of relevancy and pertinency. *Greenberg v. Aetna Insurance Co., supra* 427 Pa. at 514–515, 235 A.2d at 577–578; *Nagle v. Nagle,* 316 Pa. 507, 511, 175 A. 487, 489 (1934);

*Jennings v. Cronin,* 256 Pa.Super. 398, 403, 389 A.2d 1183, 1185 (1978).

To achieve the beneficial purposes of the rule, an absolute privilege has been held applicable to defamatory material contained in a petition for writ of *habeas corpus, Passon v. Spritzer,* 277 Pa.Super. 498, 419 A.2d 1258 (1980); a brief, *Id.;* an affidavit, *BBCI, Inc. v. Canada Dry Delaware Valley Bottling Co.,* 393 F.Supp. 299 (E.D.Pa.1975); and counsel's statements to a client, *Jones v. RCA Music Service,* 530 F.Supp. 767 (E.D.Pa.1982).

The extent of a lawyer's privilege has been defined in the Restatement (Second) of Torts § 586 as follows:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Other jurisdictions, applying the Restatement view, have held the privilege applicable to a letter from counsel to an insurer as a preliminary to suit, *Chard v. Galton,* 277 Or. 109, 559 P.2d 1280 (1977); a letter from counsel to a party against whom suit was seriously contemplated, *Sriberg v. Raymond,* 370 Mass. 105, 345 N.E.2d 882 (1976); a letter from counsel to the attorney for an adverse party, *Romero v. Prince,* 85 N.M. 474, 513 P.2d 717 (Ct.App.1973); letters from counsel to a client and to the judge in a pending action, *Smith v. Hatch,* 271 Cal.App.2d 39, 76 Cal.Rptr. 350 (1969); a letter from counsel to a judge concerning acts of former counsel in a pending action, *Richeson v. Kessler,* 73 Idaho 548, 255 P.2d 707 (Idaho 1953); an affidavit and letter to a party from counsel seeking settlement, *Zirn v. Cullom,* 187 Misc. 241, 63 N.Y.S.2d 439 (N.Y.Co.1946).

A review of these decisions persuades us that the privilege was correctly applied by the trial court to letters written by counsel on behalf of a party to a quasi-judicial officer appointed to hear issues which were a part of divorce proceedings then pending. The privilege was also

applicable to oral communications by counsel to a judge that Smith had not paid support as required by an order which the judge had entered against him.

█ The purpose for which the privilege exists cannot fully be achieved by limiting the privilege to structured or formal proceedings. To permit an attorney to best serve a client, the privilege must be broad enough to include occasions when a client's cause is being advocated under less formal circumstances. Thus, the privilege extends to and includes preliminary demands, as well as informal conferences and negotiations conducted after litigation has been commenced or when litigation is seriously contemplated. "[I]t is, on the whole, for the public's interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech, in conducting the causes, and advocating and sustaining the rights, of their constituents; and this freedom of discussion ought not to be impaired by numerous and refined distinctions." *Sriberg v. Raymond, supra* 345 N.E.2d at 884, quoting *Hoar v. Wood,* 3 Met. 193, 197–198 (1841).

The third count of appellant's complaint contains averments that Griffiths gave Mrs. Smith "illegal, improper and reckless" advice that she could remove property from the home which previously had been occupied by Mr. and Mrs. Smith as their marital home. This advice, appellant alleges, was designed to harass and injure him so that he would agree to a property settlement. Pursuant to this advice, it is alleged, Mrs. Smith removed from the marital home certain unidentified items of property which appellant had purchased following separation and which were owned solely by him.

█ The general rule is that an attorney will be held liable for negligence only to his client. In the absence of special circumstances, he will not be held liable to anyone else. 7 Am.Jur.2d, Attorneys at Law § 232. See also: *Worldwide Marine Trading Corp. v. Marine Transport Service, Inc.,* 527 F.Supp. 581 (E.D.Pa.1981); *Sachs v. Levy,*

216 F.Supp. 44 (E.D.Pa.1963); Annotation: Attorneys—Liability to Third Parties, 45 A.L.R.3d 1181 et seq. The basis for this rule is the absence of privity between the lawyer and one with whom he has no contract of employment.

In more recent years the privity rule has been subjected to criticism because a strict application contains too great a potential for unrecompensable injury to innocent third persons. On the other hand, to abandon the concept completely entails too vast a range of the lawyer's potential liability to third parties. 45 A.L.R.3d 1185. These concerns have caused some courts, most notably the courts of California, to reject an absolute rule in favor of a balancing test. Under such a rule, the liability of an attorney to third persons is determined "on a case by case basis, by the balancing of a number of factors, including the extent to which the transaction involved the third party, the foreseeability of harm to the third party, the closeness of the connection between the negligence and the injury suffered, and the policy of preventing future harm." See: 45 A.L.R.3d 1186 et seq. A similar approach was advocated by a panel of this Court in *Guy v. Liederbach*, 279 Pa.Super. 543, 421 A.2d 333 (1980). On allocatur, however, the Supreme Court expressly rejected a balancing test and continued to adhere to the privity rule. *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983). The Supreme Court, after careful consideration, concluded that policy considerations, as well as unsatisfactory experiences with the California rule, compelled adherence to the rule requiring that an attorney-client relationship be shown before a cause of action can be maintained against an attorney for professional negligence. *Id.*, 501 Pa. at 58, 459 A.2d at 750. These policy considerations are even stronger where the attorney is representing a client who is involved in litigation. In such circumstances, the law is clear that the attorney owes no duty of care to the adverse party but only to his own client. See: *Weaver v. Superior Court*, 95 Cal.App.3d 166, 156 Cal.Rptr. 745 (1979). To impose upon an attorney a duty of care to the adverse party would place the attorney

in a position where his own interest would conflict with the interests of his client and prevent him from exerting a maximum effort on behalf of the client. It would place an undue burden on the profession and would diminish the quality of the legal services rendered to and received by the client. *Weaver v. Superior Court, supra.* Where an attorney represents a client in litigation or during arms length negotiations, the public interest demands that attorneys, in the proper exercise of their functions as such, not be liable to adverse parties for acts performed in good faith and for the honest purpose of protecting the interests of their clients. *Gifford v. Harley,* 62 A.D.2d 5, 404 N.Y.S.2d 405 (3d Dept.1978).

■ If an attorney's conduct is motivated by malice or if he commits an intentional tort, on the other hand, he may become personally liable for damage suffered by a third person. 7 Am.Jur.2d, Attorneys at Law § 233. See: *Worldwide Marine Trading Corp. v. Marine Transport Service, Inc., supra; Adelman v. Rosenbaum,* 133 Pa.Super. 386, 3 A.2d 15 (1938); *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780, 173 A.L.R. 819 (1947); *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,* 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976); Annotation, Liability of Attorney for Malicious Prosecution, 27 A.L.R.3d 1113 et seq. See also: *Pride v. Pride,* 29 Del.Co. 352 (Pa.1939). Appellant contends in the instant case that the averments of his complaint are sufficient to state a cause of action for an intentional tort. We disagree.

■ The general rule of liability for an intentional tort is articulated in Section 870 of the Restatement (Second) of Torts as follows:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

This section of the Restatement requires an intentional act which is "unjustifiable" and "culpable" and which causes harm to a legally protected interest of the plaintiff. Aside from the issue of privilege, which we do not now decide, whether conduct is actionable requires an evaluation of the following four factors: "(1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor and (4) the actor's motive." Restatement (Second) of Torts § 870, comment e.

In the instant case, the averments of the complaint do not disclose an intentional tort. It is not alleged that the attorney's advice to his client was intentionally erroneous in order to injure appellant; it is alleged only that the advice was recklessly given. Moreover, the motive for the advice, which plaintiff alleges to be recklessly incorrect, was to induce appellant to agree to a property settlement with appellee's client. The advice was given by an attorney to a client whom he represented in an acrimonious divorce action. The attorney's advice was that his client could enter what was formerly the marital home and remove personal property. Even if the advice had been intended to persuade appellant to agree to a property settlement, the attorney's motive was not improper; he was clearly acting in the interests of his client. For such advice there can be no liability to the adverse party.

Absent an intent to harm a third person by using a client unjustifiably as an instrument to inflict harm, we will not impose liability upon an attorney for advice which he has given in good faith to a client for the purpose of serving a justifiable and proper interest of the client.

The order sustaining preliminary objections in the nature of a demurrer to the complaint and entering judgment in favor of appellee is affirmed.