## Wood v. Bahniuk

*John M. McClure,* for plaintiffs and additional defendant Linda Wood.

*John W. Ashley,* for defendant Carol Bahniuk.

*Gerald J. Mullaney,* for defendant Lisa Jurglewicz.

*Christopher W. Mattson and Jeffrey Wright,* for defendant Peter Cianfrani.

*Henry T. Crocker,* for defendants William Moseley and Mark Mohn.

SAYLOR, *J.*, August 8, 1985—This action arises out of personal injuries sustained by plaintiffs Linda Wood and her son Sean as the result of an automobile accident. Defendant Peter Cianfrani, M.D., has filed, inter alia, a preliminary objection in the nature of a demurrer.[1]

The question presented on a preliminary objection in the nature of a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Bartanus v. Lis, 332 Pa. Super. 48, 480 A.2d 1178 (1984). If any theory of law will support the claim raised by the complaint, a dismissal is improper. Cianfrani v. Commonwealth, State Employees' Retirement Board, 505 Pa. 294, 479 A.2d 468 (1984). In addition, a demurrer admits every well-pleaded material fact set forth in the complaint, as well as all inferences reasonably deducible therefrom. The law is clear that a demurrer can only be sustained in a case free from doubt. Bartanus, supra.

Plaintiffs' complaint sets forth the following well-pleaded material facts: Linda and Sean were in-

---

1. Dr. Cianfrani also requests that plaintiffs' claim for punitive damages be stricken, that paragraphs 57 and 61 of the complaint be stricken and that subparagraphs H, I, J and K of paragraph 51 of the complaint be stricken. We will address these preliminary objections in our order, which follows this opinion.

356

jured on May 15, 1983, when their vehicle was struck by a vehicle driven by 19-year-old defendant Carol Bahniuk. At the time, Bahniuk was under the influence of alcohol and codeine. The codeine she ingested was contained in two Tylenol III tablets, which had been prescribed for and provided to her by Dr. Cianfrani for pain associated with menstrual cramps.

Plaintiffs allege that Cianfrani knew or should have known that his patient, Bahniuk, "would operate a motor vehicle while under the influence of Tylenol III with codeine and/or while under the influence of Tylenol III with codeine and alcohol" and "pose a threat to the lives of all other individuals on the public highways, . . . especially plaintiff Linda Wood and minor plaintiff Sean Wood." The complaint further alleges that Cianfrani failed to warn Bahniuk "of the dangers inherent in operating a motor vehicle while under the influence of Tylenol III with codeine, and/or operating a motor vehicle while under the influence of Tylenol III with codeine and alcohol."[2] Plaintiffs claim that Cianfrani's failure to provide adequate cautionary instructions to Bahniuk regarding Tylenol III with codeine "proximately caused and/or contributed to" the injuries sustained by Linda and Sean.

Since the averments of plaintiffs' complaint, except to the extent that they constitute conclusions of law, must be taken as true, the question presented under the facts of this case is whether a physician who prescribes for his patient a drug he knows or should know has an intoxicating effect has a duty

2. The complaint also alleges that Cianfrani failed to take a complete medical history of Bahniuk and that he knew or should have known that other, less dangerous analgesics were available to treat her condition.

to the public to warn that patient not to drive and/or drink and drive while under the influence of the drug. It would appear that this is a question of first impression in Pennsylvania.

We have found no Pennsylvania case imposing such a duty and plaintiffs have cited none. Nor, however, have we found a Pennsylvania case holding that there is no such duty upon a physician under the above facts, and Cianfrani has cited none. The cases he does rely upon to support his contention that no duty of care arises on the part of a physician unless a physician-patient relationship exists between the defendant physician and plaintiff claiming injury fail, in our opinion, to address the issue presented here.

In Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983), our Supreme Court considered whether a named beneficiary of a will who was also named executrix has a cause of action against the attorney who drafted the will and directed her to witness it where the fact that she witnessed the will under New Jersey law voided her entire legacy and her appointment as executrix. The court held that while a named legatee of a will may bring suit as an intended third-party beneficiary of the contract between the attorney and the testator for the drafting of a will which specifically names the legatee as a recipient of all or part of the estate, "important policies require privity (an attorney-client or analogous professional relationship, or a specific undertaking) to maintain an action in negligence for professional malpractice." Id. at 51, 459 A.2d at 746. In other words, the court refused to abolish the privity requirement in attorney-malpractice actions based on negligence. Shortly thereafter, our Superior Court in Smith v. Griffiths, 327 Pa. Super. 418, 476 A.2d 22 (1984), recognized that although strict applica-

tion of the privity rule contains a great potential for unrecompensable injury to innocent third persons, "to abandon the concept completely [would entail] too vast a range of the lawyer's potential liability to third parties." Id. at 426, 476 A.2d at 26. The court further recognized that policy considerations compel adherence to the rule requiring that an attorney-client relationship be shown before a cause of action can be maintained against an attorney for professional negligence.

Cianfrani argues that the Supreme Court's intention in referring to "analogous professional relationship[s]" in Guy was to apply its holding regarding liability to third parties to doctors as well as lawyers. He maintains that the Guy and Smith cases clearly require the existence of some special relationship between a professional and a third party who is not a client or patient before a duty of care to that third party will arise on the part of the professional. While we agree that these cases stand for· the proposition that professionals cannot always be held liable to third parties for their negligent professional conduct, we cannot agree that their holdings apply in all cases.

Plaintiff in Smith sued his wife's divorce attorney, claiming the attorney had caused injury to him by giving his wife incorrect legal advice. The trial court sustained preliminary objections in the nature of a demurrer and entered judgment in favor of the attorney. The Superior Court was thus required to define the duty, if any, owed by a lawyer to an adverse party to a dispute. The court concluded that where an attorney is representing a client who is involved in litigation, the law is clear that the attorney owes no duty of care to the adverse party, but only to his client. In reaching this conclusion, the court reasoned:

"To impose upon an attorney a duty of care to the adverse party would place the attorney in a position where his own interests would conflict with the interests of his client and prevent him from exerting a maximum effort on behalf of the client. It would place an undue burden on the profession and would diminish the quality of the legal services rendered to and received by the client." Id.

According to the court, "the public interest demands that attorneys, in the proper exercise of their functions as such, not be liable to adverse parties for acts performed in good faith and for the honest purpose of protecting the interests of their clients." Id.

The situation here does not involve a third party whose interests were adverse to those of Cianfrani's patient when the medication was prescribed. This is not a case where imposing upon a doctor a duty of care to a third party would place the doctor in a position where his own interests would conflict with those of his patient and prevent him from exerting a maximum effort on the patient's behalf. Nor is this a case where the professional question would be hampered in the proper exercise of his function.

Guy involved a testator who retained defendant-attorney to draft a will naming plaintiff as legatee and executrix. The attorney directed plaintiff to witness the will, thereby voiding her legacy under New Jersey law. Plaintiff sued the attorney, claiming that his professional malpractice had directly injured her. The court held that when a plaintiff seeks to hold an attorney liable in malpractice for negligence in advising or directing plaintiff, plaintiff must first establish the existence of an attorney-client relationship between himself and the attorney.

Plaintiff in Guy sought to hold defendant-attorney liable for negligently advising her. Plaintiffs here, however, do not seek to hold Cianfrani liable for

negligently treating *them*. Rather, they claim that he negligently failed to warn *his patient*, with whom he undisputedly had a physician-patient relationship and, as a result, they were injured.

In Leedy v. Hartnett, 510 F.Supp. 1125 (M.D., Pa. 1981), plaintiffs sued the Lebanon Veterans Administration Hospital, claiming the hospital was negligent in failing to warn them of Hartnett's alleged violent tendencies. Hartnett was a disabled veteran who had been a patient at the hospital on more than 20 occasions from 1956 through March of 1978. During most of these hospitalizations, he was treated for paranoid schizophrenia and chronic alcoholism. Throughout his course of treatment, hospital personnel were aware of a history of violent outbursts by Hartnett. Mr. Leedy met Hartnett in Leedy's capacity as a service officer of the Lebanon Veterans of Foreign Wars and invited Hartnett to be a guest in the Leedy home. The hospital was aware of this arrangement. Once there, Hartnett allegedly assaulted Leedy and his wife. Plaintiffs' theory of liability was that, because of the hospital's and Hartnett's psychiatrist-patient relationship, the hospital owed to plaintiffs a duty to warn them of Hartnett's alleged violent tendencies. The district court, applying Pennsylvania law, rejected plaintiffs' claim, holding that the hospital owed no duty to plaintiffs to warn them of any danger posed by Hartnett. The court explained that the duty of psychiatrists or custodians to warn third parties of the danger posed by a person under their care arises only where the victim can be readily identified. Since plaintiffs did not contend that Hartnett had made threats against them or that he was more likely to become violent toward people in whose presence he was comfortable, they were not readily identifiable victims.

The Leedy court stated that "those charged with the care of potentially dangerous people must be able to know to whom to give warnings." Id. at 1130. Obviously, general warnings given to a broad segment of the population would be of little value. However, plaintiffs here do not allege that Cianfrani had a duty to warn all members of the traveling public to be aware of Bahniuk's condition. Rather, they claim he was negligent in failing to warn *his patient* not to drive and/or drink and drive while under the influence of the intoxicating drug he prescribed for her, and that such negligence was the proximate cause of their injuries. They contend that Cianfrani breached a duty owed by him to those persons in the general field of danger which should reasonably have been foreseen by him when he administered the drug. Since we have found no Pennsylvania cases addressing this theory of liability, we shall look for guidance to other jurisdictions that have.

Our research indicates that other jurisdictions have permitted a cause of action by a third party against a physician for negligence in his treatment of a patient. The Court of Appeals of Texas found such a duty to exist under facts remarkably similar to those alleged by plaintiffs here in Gooden v. Tips, 651 S.W.2d 364 (Tex. App. 1983). Mr. Gooden was injured when he was struck by a car driven by Edith Goodpasture. At the time of the collision, Edith was under the influence of the drug Quaalude, which had been prescribed for her by Dr. Tips. In their petition, the Goodens alleged that Tips was negligent in prescribing the drug for Edith without warning her not to drive an automobile while under its influence. Tips moved for summary judgment, claiming that because there was no physician-patient relationship between himself and Mr. Gooden, he owed Mr. Gooden no duty.

The trial court granted Tips' motion. The Court of Appeals of Texas, however, reversed, holding that the petition was sufficient to state a cause of action against Tips. It stated:

"[U]nder proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries. In . . . the instant case, the harm resulting to the [plaintiff] 'was a reasonably foreseeable consequence of the physician's failure to warn his patient not to drive. . . . [T]he [physician] knew, or in the exercise of ordinary care should have known, that [his] patient's condition . . . could seriously impair the patient's ability to drive a motor vehicle. Thus the harm resulting to the [plaintiff] . . . 'was in the general field of danger which should reasonably have been foreseen by the doctor when he administered the drug,' and the doctor was under a duty to take whatever steps were reasonable under the circumstances to reduce the likelihood of injury to other motorists." Id. at 369-370.

The factual similarities between Gooden and the instant case are readily apparent. In each, the physician prescribed for his patient a drug he knew or should have known could have a detrimental effect on the patient's ability to drive. In each, the harm — injury to a third party occasioned by the patient's impaired driving ability due to the drug — was reasonably foreseeable by the physician when the drug was prescribed. The doctor in Gooden failed to warn his patient not to drive while under the influence of the prescribed drug. Plaintiffs here allege that Cianfrani failed to give his patient similar warnings.

The Supreme Court of Washington has also held that a physician may be liable to a third party injured by one of the physician's patients where the

physician's negligence in treating that patient was a proximate cause of plaintiff's injuries. In Kaiser v. Suburban Transportation System, 65 Wash.2d 461, 398 P.2d 14 (1965), the question presented was whether a physician is responsible for injuries suffered by non-patient bus passengers where he failed to warn his patient, a bus driver, that a possible side effect of a prescribed drug is drowsiness or lassitude. In that case, the bus struck a telephone pole when the driver lost consciousness while at the wheel. The court held that plaintiff set forth a proper cause of action and a question for the jury.

The Supreme Court of Iowa has also found such a duty to exist. In Freese v. Lemmon, 210 N.W.2d 576 (Iowa, 1973), it held that the trial court erred when it granted defendant-physician's motion to dismiss in a case where plaintiff, a pedestrian injured when the physician's patient lost control of his automobile, alleged that the physician negligently failed to diagnose the cause of his patient's seizure and the possibility of its recurrence, negligently failed to warn his patient not to drive an automobile and negligently advised his patient that he could drive an automobile. In addition, other jurisdictions have examined this issue and found such a duty to exist. Duvall v. Goldin, 139 Mich. App. 342, 362 N.W.2d 275 (1984); Davis v. Mangelsdorf, 138 Ariz. 207, 673 P.2d 951 (Ariz. App. 1983); Wharton Transport Corp. v. Bridges, 606 S.W.2d 521 (Tenn. 1980); Watkins v. United States, 589 F.2d 214 (C.A.5, 1979). We find these cases to be well reasoned.

We, therefore, hold that plaintiffs' complaint is sufficient to state a cause of action against Cianfrani, This means no more than that there is a factual question to be presented to the jury as to whether, based on expert testimony, Cianfrani

breached the appropriate standard of care in this case. We point out that we do not hold that Cianfrani had a duty to *control* his patient's conduct — to *prevent* her from driving, if she so desired. We hold only that, under the facts here alleged, Cianfrani may have had a duty to *warn* his patient not to drive and/or drink and drive.

Accordingly, we enter the following

## ORDER

August 8, 1985, after agrument held and for the reasons stated in the foregoing opinion, the preliminary objection of defendant Cianfrani in the nature of a demurrer to plaintiff's complaint is overruled. Defendant Cianfrani's motions to strike under II, III and IV of his preliminary objections are sustained. Defendant Cianfrani is allowed 30 days to plead over that portion of plaintiffs' complaint against him which has not been stricken.