**Ida M. D'ERRICO, an Individual and Allison L. Hilliard, an Individual, Appellants,**

**v.**

**Peter DeFAZIO, an Individual.**

Superior Court of Pennsylvania.

Argued May 16, 2000.
Filed Nov. 22, 2000.

Robert L. Potter, Pittsburgh, for appellants.

Louis C. Long, Pittsburgh, for appellee.

BEFORE: KELLY, FORD ELLIOTT, and OLSZEWSKI, JJ.

FORD ELLIOTT, J.:

¶ 1 Appellants Ida M. D'Errico and Allison L. Hilliard appeal from the order dated June 9, 1999 and entered June 22, 1999 granting appellee Peter DeFazio's motion for summary judgment. We affirm. The factual and procedural history of the case, taken from the trial court's opinion and supported by the record, follows:

Plaintiffs filed a Complaint in the instant matter seeking to recover damages which they allegedly sustained as a result of an incident which occurred on July 25, 1997 when the Plaintiffs were terminated from their employment with the Three Rivers Regatta by Eugene F. Connelly, the General Chairman of the Regatta. The Plaintiffs' original Complaint did not contain a separate count or cause of action against the Defendant, Peter DeFazio, but thought to impose liability upon him on the basis that he provided two deputy sheriffs to accompany Mr. Connelly when he terminated the Plaintiffs from their employment. The Plaintiffs' original Complaint alleged that Mr. DeFazio, the Chief Deputy Sheriff at the time of the incident, violated the Second Class County Code, specifically, 16 P.S. § 4210(a) pertaining to private services and that he also engaged in official oppression in violation of 18 Pa.C.S.A. § 5301. In response to the Plaintiffs' original Complaint, the Defendant filed preliminary objections, which were sustained, and the Honorable Joseph James granted Plaintiff's thirty days to file an Amended Complaint to identify separate causes of action against Peter DeFazio. Plaintiffs filed an Amended Complaint in which they set forth separate causes of action against Defendant, Peter DeFazio, pursuant to the Official Oppression Statute and the Second Class County Code. They also included claims for assault, defamation and 'intentional or prima facie tort.' The Plaintiffs claim that they are entitled to compensatory and punitive damages for the fear, fright, humiliation, and intimidation that they felt because of Peter DeFazio's actions in permitting the two deputies to assist Mr. Connelly when they were terminated from their employment. Although Peter DeFazio was not present when the Plaintiffs were fired from their employment, Plaintiffs contend that his actions in making the deputies available, rises to the level of an assault.

Evidence of record shows that on July 25, 1997, Mr. Connelly, accompanied by two deputies and a group [of] individuals which included Mr. Harry Fisfis and four laborers, walked into Ms. D'Errico's office, gave Ms. D'Errico her final paycheck, told her that her services

were no longer needed and asked her to collect her belongings and leave. (D'Errico depo. Pp.24, 29). Ms. D'Errico stated that she wanted to gather her belongings and at that point, Mr. Fisfis directed his laborers to take the desk and one of the men knocked everything from the top of her desk. (D'Errico depo. P. 35). Then, Mr. Fisfis dumped everything from the top right-hand desk drawer onto the floor. (D'Errico depo. P. 36). One of the Sheriff deputies was present when Mr. Fisfis dumped the contents of the drawer. (D'Errico depo. P. 39). However, Ms. D'Errico testified that the deputies did not pull a gun nor did they have handcuffs in their hands. (D'Errico depo. P. 51). The only interaction between Ms. D'Errico and one of the deputies occurred when she was gathering some files and the deputy told her that the files were [R]egatta property and that she could not take them. Ms. D'Errico testified that she 'politely informed him that it was my personal property' and 'he backed off.' (D'Errico depo. P. 52).

Ms. Allison Hilliard testified in her deposition that when she was told that her services were no longer needed, the deputy did not pull out his gun or handcuffs. Further, she never had any conversations with the sheriff's deputy. (Hilliard depo. P. 43).

Defendant filed preliminary objections to the Amended Complaint on the basis that there is no private cause of action for official oppression. The Preliminary Objections were overruled without opinion by the Honorable Judge Farino. Thereafter, deposition testimony revealed facts regarding the events that took place on the day that Plaintiffs were terminated. On the basis of the deposition testimony, defendant presented a Motion for Summary Judgment before this Court. After hearing oral argument, reviewing the briefs and the record in this matter, this Court found that Defendant was entitled to Summary Judgment.

Trial court opinion, ¹⁰/₁₈/99 at 1–2.

¶ 2 Appellants raise the following issues on appeal:

I. In Deciding a Motion for Summary Judgment, is a Judge Obliged to Apply the 'Law of the Case' Doctrine and Defer to a Prior Ruling of a Judge of the Same Court, Who Overruled Defendant's Prior Demurrer to Plaintiffs' Claims *In Toto*, When There is No Variance Between the Facts as Pleaded and as Demonstrated by Supporting Affidavits and Other Summary Judgment Materials and When the Only Issues Raised by the Motion for Summary Judgment are Identical to Those Raised By the Prior Demurrer, i.e., Whether the Plaintiffs have Stated Legally Cognizable Causes of Action Upon Which Relief Can Be Granted?

II. Does Pennsylvania's 'Official Oppression' Statute, 18 Pa.C.S.A. § 5301, Imply a Private Right of Civil Action?

III. Does the Pennsylvania Statute Prohibiting the Wrongful Use of Private Services, 18 Pa.C.S.A. § 4210, Create a Private Right of Civil Action?

IV. May a Person Be Subject to Tort Liability for Assault Even if He is Not the Principal Actor and Is Not Present at the Scene of the Commission of the Assault?

V. Can Nonverbal Conduct Form the Basis of a Defamation Action?

VI. Does Pennsylvania Recognize a Cause of Action for 'Intentional' or '*Prima Facie*' Tort?

Appellants' brief at 3.

¶ 3 A party may move for summary judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense

which could be established by additional discovery or expert report. Pa.R.Civ.P. 1035.2(1). "Under [Rule 1035.2(1) ], the record shows that the material facts are undisputed and, therefore, there is no issue to be submitted to a jury." Pa. R.Civ.P. 1035.2, Note. Additionally, after completion of discovery relevant to the motion, a party may move for summary judgment when "an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.Civ.P. 1035.2(2). "Under [Rule 1035.2(2) ], the record contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to a jury." Pa. R.Civ.P. 1035.2(2), Note.

¶ 4 When an appellate court reviews the grant of a motion for summary judgment, our scope of review is well settled; the trial court will be overturned only if there has been an error of law or clear abuse of discretion. *First Wisconsin Trust Co. v. Strausser*, 439 Pa.Super. 192, 653 A.2d 688, 691 (1995) (citations omitted). Our review of the record is, however, plenary. *Keselyak v. Reach All, Inc.*, 443 Pa.Super. 71, 660 A.2d 1350, 1352 (1995). With our proper role in mind, we address appellants' issues out of order because our resolution of appellants' first issue depends in part on our resolution of their remaining issues.

¶ 5 In their second issue, appellants claim that Pennsylvania's official oppression statute, 18 Pa.C.S.A. § 5301, implies a private cause of action. The trial court, relying on *Agresta v. Goode*, 797 F.Supp. 399 (E.D.Pa.1992), found that no such private right of action exists in Pennsylvania. The *Agresta* court merely decided however, that in the absence of guidance from the Pennsylvania courts, it was "unwilling to imply from a criminal statute a private right of action that will have the effect of significantly increasing public officials' ex-

posure to civil liability under state law." *Id.* at 409. We do not, therefore, find *Agresta* dispositive of this issue.

¶ 6 This court recently set forth the appropriate analysis when deciding whether a statute that does not expressly grant or deny a private statutory cause of action grants such a right implicitly. *Alfred M. Lutheran Distributors v. Weilersbacher, Inc.*, 437 Pa.Super. 391, 650 A.2d 83, (1994), *appeal denied*, 540 Pa. 627, 658 A.2d 791 (1995). As in *Alfred M. Lutheran Distributors*, the statute in this case does not expressly grant or deny a private right of action:

**§ 5301. Official oppression**

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

(1) subjects another to arrest, detention, search seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

(2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

18 Pa.C.S.A. § 5301. To determine whether the statute implies a private right of action, we must therefore determine 1) whether appellants are among the class for whose *especial* benefit the statute was enacted; 2) whether there is an indication of legislative intent, explicit or implicit, either to create such a remedy or to deny it; and 3) whether such a remedy is consistent with the underlying purposes of the legislative scheme to imply such a remedy. *Alfred M. Lutheran Distributors*, 650 A.2d at 87, citing and quoting *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations and quotation marks omitted, emphasis in *Cort* ).

¶ 7 It is clear that the official oppression statute, like all criminal statutes, is intended to protect the public in general from certain behavior which society finds abhorrent and to punish those who engage in that behavior: in this case, the statute is intended to protect the public from an abuse of power by public officials, and to punish those officials for such abuse. To find that the statute was enacted for appellants' especial benefit, however, because appellee allegedly abused his power by authorizing his deputies to assist in appellants' termination from employment would be to imply a private right of action in all criminal statutes and for all victims of crime. Without some indication in § 5301 that the legislature contemplated a private right of action for acts of official oppression, we are therefore reluctant to create one.

¶ 8 As appellants assert, Pennsylvania courts have on occasion recognized that tort liability may be imposed for Crimes Code violations. (Appellants' brief at 17, citing, *inter alia*, *Everett v. Harron*, 380 Pa. 123, 110 A.2d 383 (1955); *Commonwealth v. Groft*, 424 Pa.Super. 510, 623 A.2d 341 (1993); *Pearl Assurance Co. v. National Ins. Agency, Inc.*, 150 Pa.Super. 265, 28 A.2d 334 (1942).) We find these cases inapposite, however. In *Everett*, for example, the supreme court considered whether victims of discrimination in public accommodations had a right of action pursuant to a statute making it a misdemeanor to refuse access to such accommodations on the basis of race, creed, or color. The court found such a right because the language of the statute entitled "[a]ll persons within the jurisdiction of this Commonwealth" to full and equal public accommodation, thereby also entitling such persons to enforce the right granted by the statute. *Everett, supra* at 126, 110 A.2d at 385. The statute also referred to "presumptive evidence in any civil or crim-

inal action," thereby indicating that the legislature contemplated civil relief. *Id.* at 127, 110 A.2d at 385–386.

¶ 9 Other cases cited by appellants are likewise inapposite. *Braxton v. Com., Dept. of Transportation*, 160 Pa.Cmwlth. 32, 634 A.2d 1150 (1993); and *Com., Dept. of Public Welfare v. Hickey*, 136 Pa. Cmwlth. 223, 582 A.2d 734 (1990), hold that violation of a criminal statute may constitute negligence per se if the plaintiff is in the class of persons the statute was intended to protect. *Pearl, supra,* recognizes that the same conduct that constitutes a violation of a criminal statute may also form the basis for a separate civil claim under the well-established common law. *Pearl*, 28 A.2d at 338. In this case, however, appellants do not seek redress under general negligence or other well-established common law principles: instead, they seek to impose civil liability based on the criminal statute itself. As a result, we find no merit to appellants' second issue. While appellants may have a civil claim based on the same conduct the statute makes criminal, that claim does not lie pursuant to the statute.

¶ 10 In their third issue, like their second, appellants claim they have a private right of action for violation of a statute, in this case 16 Pa.C.S.A. § 4210(a), which prohibits members of the sheriff's department from performing official services in exchange for compensation, gifts, or gratuities from private individuals. According to appellants, under 16 Pa.C.S.A. § 3109, applicable to violations of § 4210, a proceeding for the recovery of a pecuniary penalty or forfeiture for violating § 4210 may be by either indictment or by civil action. (Appellants' brief at 22–23.) Thus, according to appellants, they have a private right of action pursuant to §§ 4210 and 4211,[1] which prescribes penalties for

---

1. Section 4211 provides:

 **§ 4211. Penalties**

 Any sheriff, deputy sheriff or any other county police officer whatsoever, or any

other official of the county, or any person, association or corporation violating any of the provisions of sections 1206, 1209 or 1210 of this act,[footnote 1] shall be guilty

violations of § 4210, as provided by § 3109. (Appellants' brief at 22–23.)

¶ 11 The flaw in appellants' logic is that they have transformed *the county's* right either to seek an indictment or to bring a civil action into *a private right* to bring a civil action pursuant to the statute. As appellants themselves point out, however, albeit in the context of § 5301, discussed *supra,* "In construing the statute, this court must presume that the legislature intended to favor the public interest as opposed to private interests...." ) (Appellants' brief at 21, citing 1 Pa.C.S.A. § 1922(5).) Furthermore, appellants are not seeking the penalties imposed by § 4211, which amount to fines of between $100 and $500 or imprisonment for not more than 90 days. 16 Pa.C.S.A. § 4211. Finally, applying the analysis set forth by the Supreme Court in *Cort, supra,* and adopted by this court in *Alfred M. Lutheran Distributors, supra,* appellants are not members of a class for whose especial benefit § 4210 was enacted. *Alfred M. Lutheran Distributors,* 650 A.2d at 87.

■ ¶ 12 Appellants next argue that the court erred in holding that an individual may not be liable for the tort of assault[2] if he is not the principal actor and is not present at the scene. (Appellants' brief at 23.) Implicit in appellants' argument is the assumption that one or both of the deputy sheriffs committed an assault. There is, however, absolutely no evidence in the record that appellee instructed or encouraged the deputies to act in such a way as to place appellants in apprehension of a battery. Therefore, also implicit in appellants' argument is the assumption that the deputies acted as appellees' agents or employees, thereby rendering appellee vicariously liable for their conduct.

¶ 13 The flaw in this argument, however, as the trial court aptly notes, is that appellee was sued in his individual capacity and not in his official capacity as sheriff or acting sheriff. (Trial court opinion, 10/18/99 at 6.) Thus, even under a theory of vicarious liability, appellee could not be found liable for the conduct of the deputies acting in their official capacity, especially where appellants' testimony indicates they were apprehensive precisely because the deputies were acting in their official capacity. (R.R. at 391–418; 466–489.) Appellant Hilliard, for example, testified at her deposition that although she never spoke to either deputy and neither pulled out his gun or handcuffs, she did not have to ask Mr. Connelly why they were there. "The fact that they were never more than two feet away from me, the snap was unsnapped off of their holster and their handcuffs were visibly displayed in the front of their pants" made the point. (*Id.* at 487.)

■ ¶ 14 As our sister court observed, imputed negligence, or vicarious liability, requires some relationship between A, who is negligent, and B, who is not, but who is charged with A's negligence toward C because of the relationship between A and B. *Hickey,* 582 A.2d at 735, citing W. Prosser and W. Keeton, The Law of Torts, 75 (5th ed.1984). " '[A]n employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of employment.... [L]iability ... may also extend to intentional or criminal acts committed by the employee.' " *R.A. v. First Church*

---

of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or to undergo imprisonment for not less than ninety (90) days nor more than two years, or both. 1953, July 28, P.L. 723, art. XII, § 1211. [footnote 1] Sections 4206, 4209, 4210 of this title.

16 Pa.C.S.A. § 4211.

2. An assault has been described as an act intended to put another in reasonable apprehension of an immediate battery, which succeeds in causing an apprehension of such a battery. *Cucinotti v. Ortmann,* 399 Pa. 26,, 159 A.2d 216, 217 (1960).

*of Christ*, 748 A.2d 692, 699 (Pa.Super.2000), quoting *Costa v. Roxborough Memorial Hospital*, 708 A.2d 490, 493 (Pa.Super.1998), *appeal denied*, 556 Pa. 691, 727 A.2d 1120 (1998) (other citations omitted). Implicit in the rule is the corollary that an employer in his capacity as an individual cannot be vicariously liable for the conduct of an employee acting during the course and within the scope of his employment, and appellants have cited no case indicating otherwise.

¶ 15 *Poulos v. Brady*, 167 Pa.Super. 150, 74 A.2d 694 (1950), cited by appellants, addresses the liability of an innkeeper to patrons of the inn who are attacked by third persons and dogs while on the premises. *Edgin v. Talley*, 169 Ark. 662, 276 S.W. 591 (1925), *overruled in part on other grounds*, *Dillard v. State*, 260 Ark. 743, 543 S.W.2d 925 (1976), stands for the proposition that for all civil purposes the acts of a deputy sheriff are those of his principal, so that "a sheriff or constable is liable for the act, default, tort or other misconduct done or committed by his deputy, colore officii." *Id.* at 667, 276 S.W. at 593. *Edgin* therefore merely applies the rule stated in *R.A., supra*, to the sheriff/deputy relationship. Thus, even if we were bound to follow *Edgin*, it would not support a finding of liability on the part of appellee in his individual capacity for the alleged assault committed by the deputies under color of office.[3]

■ ¶ 16 In their fifth issue, appellants claim the court erred in finding that they failed to state a claim for defamation. In an action for defamation, the plaintiff must prove, if the issue is properly raised: 1) the defamatory character of the communication; 2) publication by the defendant; 3) its application to the plaintiff; 4) understanding by the recipient of its defamatory meaning; 5) understanding by the recipient of it as intended to be applied to plaintiff; 6) special harm to the plaintiff; 7) abuse of a conditionally privilege occasion. 42 Pa.C.S.A. § 8343(a); *Maier v. Maretti*, 448 Pa.Super. 276, 671 A.2d 701, 704 (1995), *appeal denied*, 548 Pa. 637, 694 A.2d 622 (1997). "[I]t is the function of the court to determine whether the communication complained of is capable of a defamatory meaning." *Id.* (citation omitted). "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him." *Id.* (citation omitted). "A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." *Id.* (citation omitted).

■ ¶ 17 According to appellants, appellee's conduct in providing deputy sheriffs to assist Mr. Connelly in terminating appellants' employment communicated to outsiders that appellants were "potential lawbreakers who would not hesitate to steal Regatta property...." (Appellants' brief at 28–29.) In support of their argument, appellants cite *Berg v. Consolidated Freightways, Inc.*, 280 Pa.Super. 495, 421 A.2d 831 (1980), and *Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959), on which the *Berg* court relied.

■ ¶ 18 We have reviewed both *Bennett* and *Berg* and find both distinguishable. We agree with appellants that Pennsylvania appears to allow an action in slander to be grounded in conduct alone. In *Bennett*, the court found that the acts of a store assistant·manager in accosting the plaintiff as she left the store, ordering her to remove her coat, then checking her pockets and her purse while passers-by stopped to watch, amounted to "a dramatic pantomime suggesting to the assembled crowd that [the plaintiff] was a thief." *Id.* at 98, 151 A.2d at 477, 478. Similarly, in *Berg, supra*, the court found that the defendant employers defamed the plaintiff

---

**3.** We also question whether appellants' deposition testimony supports a claim for assault; however, we assume without deciding, that it does.

employee when they forced him to resign in the midst of an investigation into theft and communicated to other employees that he was implicated in the theft. *Berg*, 421 A.2d at 833.[4]

¶ 19 In both *Bennett* and *Berg*, the defendants' conduct was far more egregious and far more public than appellee's conduct in this case, in which, from the privacy of his home, he instructed a deputy to take a second deputy and accompany Mr. Connelly in order to retrieve Regatta property from the Westin William Penn Hotel and to keep the peace. (R.R. at 262–266.) Nothing in the evidence indicates that appellee communicated to anyone, including the deputies, anything that would tend to sully appellants' character. Furthermore, nothing in the evidence indicates that appellee communicated to anyone other than the deputies that they were to accompany Mr. Connelly.[5] Thus, we fail to see how appellee's conduct in directing the deputies to accompany Mr. Connelly, standing alone, was defamatory in character.

¶ 20 Appellants appear to argue, however, that the deputies' mere presence communicated to "bystanders" in the office that appellants were potential thieves. We decline to expand the meaning of defamation so broadly, however, as it would then include many situations in which officers of the peace are employed as security. We also recognize that some situations, including involuntary terminations of employment, are volatile regardless of the character of the parties involved. Finally, appellee's conduct was not communicated to a large audience, either by appellee or the deputies; in fact, the only people who were aware the deputies ac-

companied Mr. Connelly were others present in the Regatta office, most of whom were also involved in the termination. Thus, appellee's conduct did not harm appellant's reputation in the community. *See Maier*, 671 A.2d at 705 (finding that a statement by a supervisor to a branch manager and personnel director, which was not intended for a large audience, did not harm the employee's reputation in the community). As a result, we find no merit to this issue.

¶ 21 In their sixth issue, appellants claim trial court error in refusing to recognize the existence of a cause of action for intentional or *prima facie* tort in Pennsylvania. According to appellants, this court in *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22 (1984), adopted § 870 of the Restatement (Second) of Torts, which provides:

> **§ 870. Liability for Intended Consequences–General Principle**
>
> **One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.**

Restatement (Second) of Torts § 870 (1965) (emphasis in original).

¶ 22 We agree with appellee and the trial court that Pennsylvania has not yet adopted intentional or *prima facie* tort as set forth in § 870 of the Restatement because only our supreme court and the legislature can adopt new causes of action in Pennsylvania. *See Taylor v. Albert*

---

4. As the *Berg* court noted, however, "Whether mere conduct alone, in absence of any verbal communication would support a suit in slander is a question better left to a case involving precisely those facts. Suffice it to say that in view of our holding, it would be difficult to argue against it." *Id.* at 834 n. 1.

5. Appellee admitted he spoke with the print media about the incident, but this exchange

clearly took place after the media were aware of the incident. According to appellee, he told the media that the sheriff's office had been providing security to the Regatta for more than 28 years, and that the deputies were sent to oversee the removal of Regatta property and to keep the peace. (R.R. at 292 .)

*Einstein Medical Center*, 562 Pa. 176, 754 A.2d 650 (Pa. 2000) (noting that the court had never expressly recognized a cause of action for intentional infliction of emotional distress and thus had never formally adopted § 46 of the Restatement (Second) of Torts). *See also Dominick v. Statesman Ins. Co.*, 692 A.2d 188, 192 (Pa.Super.1997) (noting that because "this Court's formal purpose is to maintain and effectuate the decisional law of our supreme court as faithfully as possible, we are not authorized to create or adopt a new standard[ ]"), *appeal denied*, 555 Pa. 701, 723 A.2d 671 (1998) (citation omitted).[6]

 ¶ 23 Nevertheless, we need not reach the issue whether a cause of action for intentional or *prima facie* tort exists in Pennsylvania because we find that appellants have failed to state a claim pursuant to § 870. *See McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 661 (Pa.Super.2000) (quoting *Strickland v. University of Scranton*, 700 A.2d 979, 987

(Pa.Super.1997), stating " '[B]ecause we find Appellant has not alleged outrageous conduct ... we need not discuss whether the tort of intentional infliction of emotional distress is actually recognized in Pennsylvania.' ").

 ¶ 24 As the *Smith* court noted, whether conduct is actionable under § 870 requires an evaluation of four factors: " '(1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor and (4) the actor's motive.' " *Smith*, 476 A.2d at 27, quoting Restatement (Second) of Torts § 870, comment e. *See also* 1 Summary of Pennsylvania Jurisprudence 2d §§ 4:5, 4:6. In this case, we find that appellants have failed to allege facts showing that appellee had the specific intent to harm them. As Comment b to § 870 indicates, "An intentional tort is one in which the actor intends to produce the harm that ensues; it is not

---

6. Federal courts addressing the existence of such a cause of action in Pennsylvania have split. In a footnote, the Third Circuit Court of Appeals acknowledged the existence of a cause of action for intentional tort pursuant to § 870, but did not express an opinion as to whether that cause of action existed in Pennsylvania. *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1231 n. 17 (3d Cir.(Pa.) 1994), *cert. granted, judgment vacated*, 514 U.S. 1034, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995). In *Charles Shaid of Pennsylvania, Inc., v. George Hyman Constr. Co.*, 947 F.Supp. 844, 847–856 (E.D.Pa.1996), the court engaged in a thorough analysis of the tort and the likelihood that the Pennsylvania supreme court would adopt it, and found that it would not. In *Ken J. Pezrow Corp. v. Karabasz*, 1995 WL 91439 (E.D.Pa.1995), *reversed*, 72 F.3d 123 (3d Cir.(Pa.) 1995), the court, citing § 870 and *Smith, supra*, opined, "[I]t is possible the Pennsylvania Supreme Court will recognize a cause of action for intentional tort." *Id.* at *7. Nevertheless, the *Pezrow* court declined to make a prediction because plaintiff's complaint failed to state a cause of action for *prima facie* tort. *Id.* In *Hanenberg v.. Borough of Bath et al.*, 1994 WL 388279 (E.D.Pa.1994), however, the court declined to recognize intentional tort as an independent cause of action in Pennsylvania because plaintiff's complaint alleged numerous other counts providing sufficient remedies. *Id.* at

5. In contrast, in *L & M Beverage Co. v. Guinness Import Co.*, 1995 WL 771113 (E.D.Pa.1995), the court recognized the existence of intentional tort pursuant to *Smith* and § 870 and denied summary judgment because defendant did not challenge that assertion by submitting affidavits or depositions. *Id.* at *5–6.

Other cases relied upon by appellants include *Levito v. Hussman Food Service Co.*, 1990 WL 1426 (E.D.Pa.1990) (finding that plaintiff was apparently pleading a cause of action for the tort of specific intent to harm, but had failed to plead specific facts of the employer's conduct that would rise to the level of malicious action, expressing no opinion as to the existence of such a cause of action in Pennsylvania); and *American Standard Life & Accident Ins. Co. v. U.R.L., Inc.*, 701 F.Supp. 527, 539 (E.D.Pa.1988) (allowing plaintiffs to proceed on their claim for intentional and wrongful conduct in light of *Smith, supra*, despite defendant's contention that Pennsylvania would not recognize such a cause of action; offering no discussion or analysis of the tort). Regardless, however, we recognize that we are not bound by a federal court's interpretation of state law. *Winslow–Quattlebaum v. Maryland Cas. Co.*, 723 A.2d 681, 684 (Pa.Super.1998), *reversed on other grounds*, 561 Pa. 629, 752 A.2d 878 (2000).

enough that he intends to perform the act...." Restatement (Second) of Torts § 870, Comment b (1965).

¶ 25 In this case, the act complained of was sending the deputy sheriffs to be present during appellants' termination. Appellants themselves allege, however, that "there simply were no legitimate interests promoted by [appellee's] conduct, other than his own *quid pro quo* arrangement with Eugene Connelly, as alleged in [appellants'] first amended complaint...." (Appellants' brief at 32.) *See also* First Amended Complaint, R.R. at 73. Thus, even if we agree with appellants that appellee's motive in sending the deputies was improper because it was self-serving, that motive does not support an allegation of a specific intent to harm appellants.[7]

¶ 26 We further find that appellants failed to establish the illegal or immoral character of appellee's actions based on their assertion that "[a] jury may reasonably conclude that [appellee] violated two ... statutes." (Appellants' brief at 32, citing comment h to § 870). We do not agree that a civil jury could reasonably conclude that appellee violated a criminal statute where he was neither charged with nor convicted of such a violation. We therefore find that appellants failed to state a claim for intentional tort or *prima facie* tort. As a result, we turn to appellants' first issue.

¶ 27 In their first issue, appellants argue trial court error in not following the law of the case when the trial court, the Honorable Paul F. Lutty, Jr., granted appellee's summary judgment motion. Appellants claim Judge Lutty "altered the resolution

of legal questions that had previously been decided by another judge of coordinate jurisdiction." (Appellants' brief at 11).

¶ 28 "Ordinarily, a trial judge should not place himself or herself in a position to overrule a decision by another judge of the same court in the same case." *Rosenfield v. Pennsylvania Auto. Ins. Plan*, 431 Pa.Super. 383, 636 A.2d 1138, 1142 (1994), citing, *inter alia, Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168, 1170 (1988). This rule is not intended, however, to preclude granting summary judgment following the denial of preliminary objections. *Rosenfield*, 636 A.2d at 1142, citing *Salerno, supra.* As the *Salerno* court opined, " 'The failure to present a cause of action upon which relief can be granted may be raised at any time. A motion for summary judgment is based not only upon the averments of the pleadings but may also consider discovery depositions, answers to interrogatories, admissions and affidavits.' " *Salerno*, 546 A.2d at 1170, quoting *Austin J. Richards, Inc. v. McClafferty*, 371 Pa.Super. 269, 538 A.2d 11, 14–15 n. 1 (1988). As the *Salerno* court continued, "We can discern no reason for prohibiting the consideration and granting of a summary judgment if the record as it then stands warrants such action. This is particularly true when the preliminary objections were denied without an opinion." *Salerno*, 546 A.2d at 1170, citing *Farber v. Engle*, 106 Pa.Cmwlth. 173, 525 A.2d 864 (1987).

¶ 29 We find the same analysis applicable in this case. Here, preliminary

---

7. We note additionally that appellee's deposition testimony indicates that he instructed the deputies just to "stand there and keep the peace[ ]" because they would not know what property belonged to the Regatta and what belonged to the hotel or to appellants. (R.R. at 265.) Appellee also stated the deputies were not sent there to harm, defame or threaten anybody: "They were just standing there to see that regatta property was retrieved...." (R.R. at 295.) We recognize that we cannot rely on a moving party's deposition

testimony to establish the absence of a material issue of fact when reviewing the grant of a motion for summary judgment. Pa.R.Civ.P. 1035.2, Note, citing *Nanty–Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932) (other citation omitted). However, in this case, appellants presented no evidence to support the element of specific intent to harm, and, in fact, alleged that obtaining Mr. Connelly's future support for appellee's political campaign, not a desire to harm appellants, motivated appellee to send the deputies.

objections were also denied without an opinion. While we recognize that that fact, standing alone, does not entitle a second judge hearing the same matter to overrule the first judge, *Goldey v. Trustees of the University of Pennsylvania*, 544 Pa. 150, 153–54, 675 A.2d 264, 266–267 (1996), we note that the record before the second court in this case included evidence in the form of deposition testimony not available to the first court. The summary judgment court therefore had a more complete record upon which to conclude that appellants were unable to state a claim on which relief could be granted.

¶ 30 Furthermore, allowing the parties to proceed to trial would have been a waste of judicial resources as well as a time-consuming and expensive burden to the parties. *Salerno*, 546 A.2d at 1170. *See also Goldey, supra* at 155–56, 675 A.2d at 267 (explaining *Salerno* and holding that "[w]here the motions differ in kind, as preliminary objections differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion *of the same kind* has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.") (emphasis in original).

¶ 31 Moreover, even if the trial court reviewing the preliminary objections found as a matter of law that Pennsylvania allowed private causes of action for official oppression and wrongful use of private services and also recognized a cause of action for *prima facie* tort, we fail to see how allowing the case to proceed to trial on these claims would further the goals of the law of the case doctrine: assuming a jury awarded appellants damages as to these counts, appellee would then presumably raise the error in post-trial motions and on appeal. As a result, the time and financial resources of both the parties and the judiciary would have been spent for naught. As the *Salerno* court observed:

> [W]here, as here, dismissal of the entire complaint on motion for summary judgment is appropriate, preclusion of consideration of the summary judgment motion by application of the rule stated, would have further burdened the parties and the court by requiring them to undergo the time and expense of an unnecessary trial, and thereby thwart the very purpose the rule was intended to serve, *i.e.* that judicial economy and efficiency be maintained. Thus, we reject appellant's first contention on appeal.

*Salerno*, 546 A.2d at 1170. *See also Commonwealth v. Starr*, 541 Pa. 564, 576, 664 A.2d 1326, 1332 (1995) (departure from the law of the case doctrine is only allowed in exceptional circumstances, including where the prior holding was clearly erroneous and would create a manifest injustice if followed).

¶ 32 Order granting summary judgment affirmed.