## The COUNTY OF LUZERNE

v.

## The LUZERNE COUNTY RETIREMENT BOARD, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 4, 2005.

Decided June 9, 2005.

Publication Ordered Sept. 8, 2005.

Carl A. Solano, Philadelphia and Christopher P. Cullen, Dunmore, for appellant.

Christopher B. Jones, Scranton, for appellee.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and COHN JUBELIRER, Judge.

OPINION BY President Judge COLINS.

■ This case involves an appeal by the Luzerne County Retirement Board (Board) from the order of the Court of Common Pleas of Luzerne County (trial court) granting Luzerne County's (County) Motion for Preliminary Injunction enjoining the Board from paying legal fees from the Retirement Fund (Fund) to the law firm of Schnader, Harrison, Segal & Lewis, LLP (Schnader) related to a federal civil action. Additionally, the Board attempts to appeal a ruling from the bench, not discussed in the trial court's opinion, denying a Motion to Disqualify the County's attorney, John P. Moses (Attorney Moses), for an alleged conflict of interest. We reverse as to the grant of the Preliminary Injunction[1] and conclude that the denial of the Board's Motion to Disqualify is interlocutory and not properly before this Court.

The Board retained Schnader as legal counsel to conduct an investigation that later led to the filing of a federal civil action for alleged mismanagement of a retirement fund maintained for retired employees of Luzerne County. The County originally sought to enjoin the Board from paying Schnader's legal fees back in April of 2003. At that time the trial court denied injunctive relief because Schnader's estimated fee was only $45,000.00 for the investigation and that sum was not thought to impair the Fund actuarially.

Schnader later filed suit in federal court on behalf of the Board. At the time the federal suit was instituted, two sitting County Commissioners were named as defendants. These two defendants are no longer County Commissioners, but while they were still in office the County failed to make a required annual payment to the Retirement Fund after the federal civil suit was filed. On December 29, 2003, upon learning that the legal fees associated with the investigation and filing of the federal suit cost over $400,000.00, the County again sought to enjoin the Board from paying any legal fees to its counsel. This time the trial court agreed with the County and granted the injunction *ex parte* on December 29, 2004 and affirmed that ruling at the close of its February 2, 2004 hearing. The trial court based its ruling on a finding that the costs of continuing the litigation would amount to between $3,000,000.00 and $4,000,000.00, which the court also found would actuarially impair the fund. Also raised with the trial court below was the issue of Attorney Moses's alleged conflict that could require disqualification. After hearing brief argument on that issue on January 23, 2004, the trial court denied the Board's Motion to Disqualify from the bench and without a written order.

From the outset, this Court notes that due to the manner in which the government of Luzerne County is arranged, the three County Commissioners also sit on the Board of the Retirement Fund at issue in this case, along with the County Controller and the County Treasurer. Thus, there are at least three individuals common to both sides of the present case. Nevertheless, for clarity's sake, this Court

---

1. In reviewing a trial court's grant of a preliminary injunction, the standard is whether the trial court abused its discretion or committed an error of law. *Buffalo Township v.* *Jones*, 571 Pa. 637, 813 A.2d 659 (2002), *cert. denied*, 540 U.S. 821, 124 S.Ct. 134, 157 L.Ed.2d 41 (2003).

will continue to refer to the opposing parties as the "County" and the "Board," despite the overlapping roles of the County Commissioners.[2]

■ In order to obtain injunctive relief, the County must show the following elements: (1) that a preliminary injunction is needed to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) that more harm would result from not granting the injunction than from granting it and that the injunction will not harm other interested parties in the proceedings; (3) that the injunction will restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) that the injunction is designed to abate the offending activity; and (5) that the preliminary injunction will not negatively affect the public interest. *Warehime v. Warehime*, 580 Pa. 201, 208–11, 860 A.2d 41, 46–47 (2004). We will address the requirements below.

■ The Fund was established under the County Pension Law.[3] Section 9 of the County Pension Law, 16 P.S. § 11659, states in relevant part, "The members of the board shall be trustees of the fund, and shall have exclusive management of the fund. . . ." Further, Section 5 of the County Pension Law states,

The expense of the administration of this act, exclusive of the payment of retirement allowances, *shall be paid by the county* by appropriations made on the basis of estimates submitted by the board. However, such administrative expenses may from year to year be paid from the fund unless it is determined *by*

*the actuary* that such payment will impair the actuarial soundness of the fund.

16 P.S. § 11655 (emphasis added).

Based upon the plain language of the County Pension Law we find that the trial court erred as a matter of law in its rulings with respect to the actuarial soundness of the Fund. The trial court stated in its opinion, "Obviously, this Court found the testimony presented by Luzerne County's witnesses, that the spending of pension fund monies to pursue a Federal RICO action would have an adverse impact on the actuarial soundness of the pension fund and for this reason granted the Preliminary Injunction." (Trial Court Opinion p. 4.) One witness's testimony is relevant to whether the Fund is actuarially impaired, and that is the actuary appointed under the County Pension Law. 16 P.S. § 11655. The County's witnesses have no authority to determine the actuarial soundness of the Fund, and it is an error of law to base the granting of a Preliminary Injunction on such testimony. The actuary appointed under the County Pension Law testified on direct as follows,

Q: Would the payment of legal fees for 2003 in the amount of $400,000— $400,000 to $500,000 have an actuarial— impair the actuarial soundness of the plan, in your opinion?

A: In my opinion, *it won't impair the actuarial soundness of the Fund* if the resulting increased contribution, which would be about $50,000 in 2004, is met by the county.

Reproduced Record (RR), p. 604a (emphasis added).[4]

---

2. The three County Commissioners represent the "County." Whereas, the "Board" is made up of the County Controller, the County Treasurer, and the three County Commissioners.

3. Act of August 31, 1971, P.L. 398, *as amended*, 16 P.S. §§ 11651–11682.

4. The actuary gave much the same answer as to whether the payment of legal fees in the amount of $ 3,000,000.00 to $4,000,000.00 would actuarially impair the fund: "The ques-

It is clear from the testimony of the actuary that paying Schnader's current and even prospective legal fees will not impair the actuarial soundness of the fund. Based upon this testimony we find that the County failed to meet the first element required for granting a preliminary injunction because there is no immediate or irreparable harm to the Fund according to actuary. Also, we fail to see how a dispute over the spending of monies from a pension fund cannot be adequately compensated by money damages. Indeed, the entire dispute before this Court is about nothing if not money.

In addition, we find that the County failed to satisfy the second and third elements necessary for a Preliminary Injunction to be appropriate.[5] The second element, where the County needed to show that no other interested parties would be harmed by the proceedings, is not met because the effect of this injunction is to deprive the Board, whose members act as fiduciary to the pensioners benefited by the Fund, of the ability to pay its legal counsel already engaged in litigation that may ultimately benefit the Fund.[6] The third element required for the granting of preliminary injunction is not satisfied because the injunction itself disrupts the *status quo* as it is set forth by statute. As noted above, the members of the board as trustees of the fund *"shall have exclusive management of the fund . . . ."* Section 9 of the Law, 16 P.S. § 11659 (emphasis added). By granting the injunction here, the trial court overrode the Board's exclusive management of the Fund in favor of the

County's desires as to how the Fund ought to be managed. Such an outcome is contrary to the County Pension Law controlling the Fund and upsets the *status quo*.

■ Additionally, this Court notes that the actuary qualified his statement that the Fund would not be actuarially impaired with the phrase, "if the resulting increased contribution, which would be about $50,000 in 2004, is met by the county." We also note the arguments of the County alleging that the County does not have the money to make its contributions to the Fund and that in any event the Board has elected to pay administrative expenses out of the Fund rather than submitting those expenses to the County for payment. Neither argument is of any moment here because whether the County has the money does not change the fact that, under the plain language of the County Pension Law quoted above, 16 P.S. § 11655, the County is required to make its Annual Required Contribution (ARC) payments into the Fund as a matter of law. As noted by the Board in its brief, the Pennsylvania Supreme Court has stated, "The Legislature had and has the absolute right to require the county . . . to help support the fund." *Retirement Bd. of Allegheny County v. McGovern*, 316 Pa. 161, 175, 174 A. 400, 407 (1934). The General Assembly has exercised this right, and the County Pension Law makes no exceptions to this requirement other than where the actuary determines that the spending of Fund monies would impair the actuarial soundness of the Fund. The actuary has

---

tion is no, it won't if the additional funding requirements that the payment of (sic) such fees would generate are met by the county going forward." RR p. 605a.

5. Whether the fifth element required for granting a Preliminary Injunction is met is difficult to ascertain and may only be known upon the conclusion of the related, pending

federal litigation. In any event, this Court need not decide this issue as failure to meet any *one* requirement is enough to deny the preliminary injunction. *Warehime*.

6. This Court does not mean to comment on the likelihood of success of the pending litigation as the merits of that case are not properly before us.

made no such determination on the record before this Court. Additionally, whether the Board elects to pay administrative expenses out of the Fund rather than through the County does not change the fact that the County is required to make its ARC payments. The fact that the actuary qualified his statement that the fund would not be actuarially impaired does not change the fact that he determined it would not be impaired by the payment of legal fees, so long as money owing to the Fund from the County is paid. Indeed, contrary of what the trial court thought of the fact that the County has not made its ARC payments,[7] we find that the County's non-payment only buttresses the Board's argument against granting the preliminary injunction.

 The County does not come to this Court with clean hands. A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. *Terraciano v. Dept. of Transp., Bureau of Driver Licensing*, 562 Pa. 60, 753 A.2d 233, 238 (2000). The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue. *Id.* It is undisputed that the County owes ARC payments to the Fund. For this very reason the County cannot credibly claim that the Fund will become actuarially unsound because of a lawsuit, when the County's own non-payment is jeopardizing the actuarial soundness of the Fund. Again, we rely on the testimony of the actuary for the Fund quoted above. The actuary did not indicate that the Fund would become actuarially unsound because of the lawsuit. The

actuary stated the Fund would become unsound if the County did not meet its statutorily mandated contributions to the Fund. In this case the County has not acted equitably, and on this ground, as well as the grounds discussed already, the County is not entitled to receive equitable relief.

█ We will not interfere with the ruling of the trial court on its denial of the Board's Motion to Disqualify Attorney Moses from the case. The trial court did not address this issue in its opinion. However, we are persuaded that the Board is seeking to appeal a matter that has not ended the litigation, and as such, the appeal is interlocutory and not properly before the Court. *Middleberg v. Middleberg*, 427 Pa. 114, 233 A.2d 889 (1967); *Seifert v. Dumatic Industries, Inc.*, 413 Pa. 395, 197 A.2d 454 (1964); *Township of Kennedy v. Kenvue Development, Inc.*, 145 Pa. Cmwlth. 299, 603 A.2d 257 (1992); In any event any conflict has been waived by the parties Attorney Moses represents.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 9th day of June 2005, the order of the Court of Common Pleas of Luzerne County is reversed.

---

7. On this subject the trial court stated to the Board's counsel, "I'm well aware of the payments that the actuary has indicated are due to Fund for the year 2003–2004. Okay. I'm aware of what has been indicated. It's there. And to be honest with you, I don't see how in the name of God that helps your case; it only makes it worse." RR, p. 498a.