# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy Parks Miller,          :
District Attorney            :
                                :    Nos. 856 C.D. 2015
           v.              :         857 C.D. 2015
                                :    Argued: February 10, 2016
County of Centre,           :
                   Appellant    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION**
**BY JUDGE SIMPSON**                  **FILED: March 15, 2016**

In these consolidated appeals, the County of Centre (County) appeals from two orders of the Court of Common Pleas of Centre County (trial court)[1] granting preliminary injunctive relief to County District Attorney (DA) Stacy Parks Miller. Specifically, the trial court enjoined the County from responding to Right-to-Know Law (RTKL)[2] requests for "judicial records" related to the DA. The County argues DA records are not "judicial" because the office of the DA is not a judicial agency. Further, the County contends the relief is overbroad in that it prohibits responses to RTKL requests seeking correspondence of a local agency regardless of subject matter. Upon review, we reverse both orders.

---

[1] The Honorable Steward Kurtz, a Senior Judge with the Huntingdon County Court of Common Pleas, specially presided.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

## I. Background

DA Miller filed a complaint seeking declaratory relief, later amended to enjoin the County from responding to RTKL requests seeking records related to her or to her office (DA's Office). The litigation stems from the County's response to RTKL requests for telephone usage records of the DA and certain judges, including Judge Jonathan D. Grine (Grine) and Magisterial District Judge (MDJ) Kelley Gillette-Walker (Gillette-Walker) (collectively, the Judges). The Judges also sought an injunction barring the County from responding to RTKL requests, which the trial court granted (Judicial Cases).[3] The County responded to the requests without notifying or consulting the Judges. In granting access, the County released parts of the Judges' telephone numbers and created a document that tracked the usage between the DA and the Judges on a color-coded spreadsheet. Although the response disclosed that a communication between the DA's and the Judges' telephone numbers occurred, it did not reveal the content of the communications.

In May, 2015, after hearing the Judicial Cases, the trial court held a hearing on the DA's complaint. The trial court subsequently incorporated the record from the Judicial Cases into the record here. As in the Judicial Cases, the County rationalized that it did not need to consult the DA's Office before responding to the RTKL request because the responsive records were invoices from Verizon. The County contracts with Verizon for cellular telephone service, and it pays the invoices. Thus, the County had access to the invoices showing the usage of the

---

[3] The County also appealed the preliminary injunctions issued in the Judicial Cases, which matters are docketed at 854 C.D. 2015 (Grine) and 855 C.D. 2015 (Gillette-Walker).

specified individuals, including the telephone numbers of the individuals with whom they communicated.

The DA countered that the County lacked the authority to respond to RTKL requests for her records because the DA's Office is a judicial agency. The DA asserted that records documenting activity of a judicial agency are "judicial records" inaccessible under the RTKL.

The trial court entered an order on May 13, 2015, based on its decision in the Judicial Cases (May 13th Order). The May 13th Order provides: "…the [County] is enjoined from making any response to any request made pursuant to the [RTKL] for judicial records relating to [the DA]. The [County] shall direct any requests received to the appropriate official, who shall then respond in accord with the [RTKL.]" Notice of Appeal (Dkt. 856 C.D. 2015), Ex. A (emphasis added). From the bench, the trial court stated: "… I have already made a decision in this case – in the [Judicial Cases] – and I have stated my position in writing, and I'm certainly not going to change my opinion in this case." Reproduced Record (R.R.) at 164a.

To clarify the parameters of the term "judicial records," and whether certain RTKL requests fell within the injunction, the parties participated in a conference call. See Supplemental Record (S.R.), Ex. 2, Notes of Testimony (N.T.), 9/1/15, at 5. As a result, the trial court later expanded the preliminary injunction on May 19, 2015 (May 19th Order), as follows: "the [County] is prohibited from producing in response to [RTKL] requests any emails or letters to or from the [DA's Office]." Notice of Appeal (Dkt. 857 C.D. 2015), Ex. A.

The County filed a notice of appeal as to each order. This Court consolidated the appeals (collectively, the DA Appeal). The County filed a motion to strike portions of the DA's brief, which this Court denied. This Court also denied the County's motion to consolidate the DA Appeal with the appeal of the Judicial Cases. After briefing and oral argument, the matter is ready for disposition.

## II. Discussion

On appeal,[4] the County argues the trial court erred in extending the preliminary injunction issued in the Judicial Cases to the DA because the DA's Office is not a "judicial agency" under the RTKL. As to the May 19th Order, the County also claims the preliminary injunction is overbroad.

The DA counters the trial court did not err because the DA and her staff qualify as a judicial agency. Essentially, the DA asserts the DA and her staff are employees of the judiciary; accordingly, the County lacks jurisdiction as a local agency to respond to RTKL requests pertaining to its activities. In addition, as to the May 19th Order, the DA contends most of its correspondence pertains to the criminal investigations. As a result, it is protected by the Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S. §§9101–9183.

---

[4] "In reviewing a trial court's grant of a preliminary injunction, the standard is whether the trial court abused its discretion or committed an error of law." Cnty. of Luzerne v. Luzerne Cnty. Ret. Bd., 882 A.2d 531, 533 n.1 (Pa. Cmwlth. 2005) (citing Buffalo Twp. v. Jones, 813 A.2d 659 (Pa. 2002)).

4

The May 13th Order is based on the trial court's conclusion that the DA's Office is a judicial agency. However, the May 19th Order implicates the content of the records requested. We will analyze the orders separately.

## A. May 13th Order (Judicial Agency)

Pursuant to the RTKL, a "judicial agency" is defined as, "[a] court of the Commonwealth or any other entity or office of the unified judicial system." Section 102 of the RTKL, 65 P.S. §67.102. The "unified judicial system" (UJS) is defined in Section 102 of the Judicial Code as "the [UJS] existing under section 1 of Article V of the Constitution of Pennsylvania and section 301 (relating to [UJS])." 42 Pa. C.S. §102.

The Pennsylvania Constitution provides:

The judicial power of the Commonwealth shall be vested in a [UJS] consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law …. All courts and justices of the peace and their jurisdiction shall be in this [UJS].

PA. CONST. art. V, §1; see Section 301 of the Judicial Code, 42 Pa. C.S. §301 (the UJS consists of "all courts and magisterial district judges and their jurisdiction ….").

There is no dispute that the DA's Office is not a court. Nonetheless, the DA argues the trial court properly enjoined the County from responding to RTKL requests related to the DA's Office because district attorneys qualify as "judicial" personnel. Predicated on that conclusion, the DA asserts any records relating to activities of judicial personnel are beyond the County's jurisdiction. She

5

contends records of the DA's Office are only subject to the RTKL insofar as the statute governs judicial agencies, whose disclosure is limited to "financial records."[5]

In support, the DA relies on Court of Common Pleas of Lackawanna Cnty. v. Office of Open Records (Lackawanna County CCP), 2 A.3d 810 (Pa. Cmwlth. 2010). The DA argues Lackawanna County CCP is dispositive because the DA's Office is comprised of personnel of a judicial agency. We disagree.

In Lackawanna County CCP, the litigation involved an original jurisdiction action filed by the Administrative Office of Pennsylvania Courts (AOPC) seeking declaratory relief. Specifically, AOPC argued the Office of Open Records (OOR) lacked jurisdiction to compel Lackawanna County to respond to a RTKL request for emails involving the Director of the County's Domestic Relations Office (Director). The genesis of the litigation was a requester's appeal from Lackawanna County's response to the RTKL request, stating that the records were "of the judiciary" because the emails were generated by a court employee. Id. at 812.

Importantly, Lackawanna County submitted an affidavit attesting to the Director's status as a court employee. OOR rejected the affidavit, and it concluded the fact that the County paid the Director rendered him a County employee. As a

---

[5] Section 102 of the RTKL defines "financial records" in pertinent part as "any account, voucher or contract dealing with: (i) the receipt or disbursement of funds by an agency; or (ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property." 65 P.S. §67.102.

6

result, the records were "of" the County.[6]  Further, OOR determined the emails were housed on county-provided computers, and thus were accessible to the County.  Ultimately, OOR directed Lackawanna County to disclose the emails.

In order to enjoin disclosure, AOPC sought relief from this Court.  We granted AOPC's motion for summary relief, holding that the Director was a court-supervised employee regardless of the source of his salary.  Critical to our holding was the determination that "any record produced by a judicial employee is a record of a judicial agency." Id. at 813.  Because the Judicial Code required creation of a domestic relations office, "consist[ing] of such … other staff of the court as shall be assigned thereto," 42 Pa. C.S. §961, we concluded the Director was a judicial employee. Thus, the Director's status as a judicial employee was essential to the holding that OOR lacked authority to direct disclosure of records of a judicial agency.  Section 503(a) of the RTKL, 65 P.S. §67.503(a) (OOR hears appeals from only Commonwealth and local agencies).

The DA makes a similar argument here.  However, the material facts in this case differ from those in Lackawanna County CCP.  Significantly, in contrast to the Director of the Domestic Relations Office, employees and elected officials of the DA's office are not "judicial employees" or court-supervised personnel.

---

[6] Under the RTKL, as a local agency, a county is required to provide access to any records that are "of" that county, unless an exemption applies.  Section 305(a) of the RTKL, 65 P.S. §67.305(a).  This Court held a record qualifies as "of" a receiving agency when that record "documents a transaction or activity of the agency." Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc., 13 A.3d 1025, 1034-35 (Pa. Cmwlth. 2011) (en banc).  "Documents" means "proves, supports [or] evidences." Id.

7

As in Lackawanna County CCP, we review the relevant provisions of the Judicial Code. Section 102 defines "personnel of the system" as "judges and other judicial officers, their personal staff, the administrative staff of courts and justices of the peace, and the staff of the administrative office and other central staff." 42 Pa. C.S. §102. By contrast, "related staff" is defined as "all individuals employed at public expense who serve the [UJS] ... [other than] personnel of the system." Id. The broadest category of personnel is "system and related personnel," which is defined as follows:

> Personnel of the system <u>and related staff</u>. <u>The term includes district attorneys</u>, public defenders, sheriffs and other officers serving process or enforcing orders, registers of wills, prothonotaries, excluding prothonotaries of the Supreme Court, Superior Court and the Commonwealth Court of Pennsylvania, clerks of the courts, clerks of the orphan's court division, prison and correctional officials, <u>and the personnel of all of the foregoing</u>.

Id. (emphasis added).

District attorneys do not qualify as "personnel of the system." Notably, DAs are not listed among the courts' "personal staff," "administrative staff," or "central staff." Id. Those types of staff are employed in the business of the courts or of the UJS.

Rather, district attorneys are included in the broader definition of "system and related personnel" because they are "related staff." Our Supreme Court held "the term 'related staff' covers those whose function aids the judicial process but who are not supervised by the courts." Rosenwald v. Barbieri, 462

8

A.2d 644, 647 (Pa. 1983) (construing "related staff" as defined in 42 Pa. C.S. §102).

Supporting this distinction is the definition of "County staff" in the Judicial Code as "system and related personnel elected by the electorate of a county … other than judicial officers [(judges and appointed judicial officers)], so elected." 42 Pa. C.S. §102. The district attorney is a county-elected position. Its staff attorneys are personnel of the office of the district attorney, not of the judiciary. Further, Article IX, Section 4 of the Pennsylvania Constitution identifies county officers: "County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law." PA. CONST. art. IX, §4 (emphasis added).

Moreover, unlike Lackawanna County CCP, permitting the County to disclose records of the DA's Office does not infringe on the judiciary because that office is not judicial in nature. Also, the Director in Lackawanna County CCP was a court-supervised employee under the courts of common pleas. 42 Pa. C.S. §961. District attorneys and their staff are not supervised by the courts. Beckert v. Warren, 439 A.2d 638, 644 (Pa. 1981) (explaining 42 Pa. C.S. §1724 specifically excludes "county staff" from the courts' supervisory authority). Indeed, as district attorneys are a prosecutorial arm of government, court supervision of prosecution could raise separation of powers questions. See Commonwealth v. Buonopane, 599 A.2d 681 (Pa. Super. 1991).

9

The other cases upon which the DA relies are similarly inapplicable. The DA cites cases defining clerks of courts as part of the UJS to support its contention that records of a district attorney's office are "judicial records." See Appellee's Br. at 36.[7] The DA thus ignores the functional differences between clerks of courts and prothonotaries, who serve the courts in an administrative capacity, and district attorneys who litigate the controversies before judges.

Clerks of courts and prothonotaries hold ministerial powers only, and lack discretion in performing their duties. In re Admin. Order No. 1-MD-2003, 936 A.2d 1, 9 (Pa. 2007) (explaining prothonotaries and clerks of courts are created by the same constitutional provision, sharing "identical statutory grants of authority"); Dyson v. Dep't of Transp., Bureau of Driver Licensing, 18 A.3d 414 (Pa. Cmwlth. 2011). Further, the duties of both clerks of courts and prothonotaries are set forth in Chapter 27 of the Judicial Code as part of the office of the clerk of court of the courts of common pleas. 42 Pa. C.S. §§2701-2777. In contrast, district attorneys and their assistants are governed by Article XIV of the County Code.[8]

Additionally, judicial power is not vested in the DA's Office. "District attorneys are responsible for 'all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county for which [they are] elected ....'" Seeton v. Adams, 50 A.3d 268, 275

---

[7] See, e.g., Faulk v. Phila. Clerk of Courts, 116 A.3d 1183 (Pa. Cmwlth. 2015); Frazier v. Phila. Clerk of Courts, 58 A.3d 858 (Pa. Cmwlth. 2012); League of Women Voters v. Allegheny Cnty., 819 A.2d 155 (Pa. Cmwlth. 2003).

[8] Act of August 9, 1955, P.L. 323, as amended, 16 P.S. §§1401-1441.

(Pa. Cmwlth. 2012) (quoting Section 1402 of the County Code, 16 P.S. §1402). Thus, the function of the DA's Office to enforce the law is prosecutorial in nature, not judicial. Id. (explaining mandamus is not appropriate to compel district attorney to exercise discretion as to enforcement in particular manner).

The preliminary injunction the trial court issued in its May 13th Order is premised on its conclusion that the DA's Office is a judicial agency. The trial court erred as a matter of law in so concluding. Accordingly, the trial court's May 13th Order enjoining the County from responding to RTKL requests relating to the DA is reversed. Cnty. of Luzerne v. Luzerne Cnty. Ret. Bd., 882 A.2d 531 (Pa. Cmwlth. 2005) (reversal is proper when trial court commits clear legal error).

## B. May 19th Order (Content)

By using the term "judicial records" broadly to include records related to the DA's Office, the trial court enjoined the County from responding to any requests for correspondence related to the DA in the May 19th Order. Because a judicial agency is only required to disclose "financial records," Section 304 of the RTKL, 65 P.S. §67.304, a judicial agency is not obligated to disclose other types of records.

However, we hold the trial court erred in deeming the DA's Office a judicial agency. Thus, the DA did not establish entitlement to injunctive relief as to any RTKL request for correspondence. Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount Inc., 828 A.2d 995 (Pa. 2003) (petitioner bears the burden of proof).

11

On this record, there is no basis for an injunction barring the County from responding to any RTKL requests for emails or letters related to the DA. The DA's justification for protecting all correspondence from disclosure is CHRIA. Applicability of that defense presumes the records contain criminal investigative material. Without any evidence, the DA asserts, "most if not all correspondence with the [DA's] [O]ffice would likely be subject to CHRIA." Appellee's Br. at 47. The trial court made no findings in that regard. We are unable to uphold the trial court's injunction on such unsubstantiated assertions. Such an injunction that bars disclosure without regard to subject matter is overbroad.

Nonetheless, we caution the County from responding to RTKL requests relating to the DA's Office without consultation about whether records may warrant CHRIA protection. In recognition of the concerns of non-law enforcement personnel reviewing investigative records, the RTKL provides a separate appeals track. See Section 503(d)(2) of the RTKL, 65 P.S. §67.503(d)(2).

### III. Conclusion

Based on the foregoing, the May 13th and May 19th Orders of the trial court are reversed.[9]

_____
ROBERT SIMPSON, Judge

Judge Cohn Jubelirer did not participate in the decision in this case.

_____

[9] However, any records pertaining to the judiciary, including court-supervised personnel, may also qualify as records "of" a judicial agency. Communications between a judicial agency and a local agency may qualify. RTKL requests implicating records that are "of" both a judicial agency and a local agency are addressed in our resolution of the Judicial Cases.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy Parks Miller, : 
District Attorney : 
                                :    Nos. 856 C.D. 2015
          v.                     :       857 C.D. 2015
                                :   Argued: February 10, 2016
County of Centre, : 
                Appellant : 

# **O R D E R**

**AND NOW**, this 15th day of March, 2016, the orders of the Court of Common Pleas of Centre County are **REVERSED**.

 

_____
ROBERT SIMPSON, Judge