# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan Mull,                                         :
                          Petitioner               :
                                                   :
                 v.                                :    No. 675 M.D. 2019
                                                   :    Submitted:  May 5, 2023
John E. Wetzel, et al.,                            :
                          Respondents              :


**BEFORE:    HONORABLE RENÉE COHN JUBELIRER,** President Judge
                   **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                   **HONORABLE LORI A. DUMAS,** Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER          FILED:  March 20, 2024**

Presently before the Court are preliminary objections (POs) filed by Respondent John E. Wetzel, et al., (Respondents)[1] to the pro se amended petition for review (Petition)[2] filed by Ryan Mull (Mull).  In his Petition, Mull challenges the implementation of the Violence Reduction Initiative (VRI)[3] at the State Correctional

---

[1] In his original petition for review, Ryan Mull (Mull) named John E. Wetzel, Secretary of Corrections; Barry Smith, Facility Manager at the State Correctional Institution (SCI) at Houtzdale; Dorina Varner and Keri Moore, Chief Grievance Officers for the Department of Corrections; Rebecca Reifer, Grievance Coordinator at SCI-Houtzdale; and Brook Kelly, Acting Unit Manager and Unit Counselor at SCI-Houtzdale, as respondents.  In his amended petition for review, Mull sought to add Bobbie Jo Salamon, Deputy; Susan Hnatkovich, Grievance Officer; Vincent Defelice, Unit Manager; and Timothy Little, Acting Unit Manager, as respondents.

[2] Mull's amended filing, titled "Supplemental/Supplementation of Petition for Review," sought to add exhibits and parties and correct the spelling of names.

[3] VRI has also sometimes been referred to as the Violence Reduction Strategy or VRS. *See, e.g.*, *Rokita v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 182 M.D. 2020, filed Nov. 20, 2020).

Institution at Houtzdale (SCI-Houtzdale), where Mull is currently housed, on multiple bases. Upon review, we sustain the POs and dismiss Mull's Petition.

As a preliminary matter, when ruling on preliminary objections, the Court must accept all well-pleaded factual allegations as true, along with any inferences reasonably deduced therefrom. *Neely v. Dep't of Corr.*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003). The Court is not bound, however, "by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). Preliminary objections should not be sustained unless it "appear[s] with certainty that the law will not permit recovery and any doubt should be resolved by a refusal to sustain them." *Neely*, 838 A.2d at 19 n.4.

With this standard in mind, we consider the facts as alleged by Mull.

## I.     THE PLEADINGS

On December 13, 2019, Mull initiated this action in the Court's original jurisdiction against Respondents, numerous employees of the Department of Corrections (Department). Therein, Mull averred as follows.[4]

On May 11, 2019, there was a fight between inmates during the evening pill line. (Petition ¶ 29.) As a result of the fight, SCI-Houtzdale locked down one of the units from May 11 through May 14 pursuant to its VRI policy. (*Id.* ¶ 30.) The policy was invoked following subsequent altercations, resulting in an additional lockdown

---

[4] Initially, we note that Mull repeatedly lists the denial of his two grievances as the orders under review. (*See, e.g.*, Petition, Introductory Paragraph; Mull's Brief, "Order[s] in Question.") It is well settled, however, that this Court lacks appellate jurisdiction over the Department's denial of inmate grievances. *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 359 (Pa. 1998).

between August 9, 2019 and August 13, 2019. (*Id.* ¶¶ 49, 55[5]-62.) Mull alleged use of the policy interfered with his "privileges and rights as defined by 37 Pa. Code § 93.10." (*Id.* ¶ 32 (emphasis omitted).) Mull also averred he was denied the right to outdoor exercise under Section 5901 of the Prisons and Parole Code, 61 Pa.C.S. § 5901, and his rights to shower, participate in visits, use the law library, attend religious services, use the phone, and participate in work detail were "suspended." (*Id.* ¶¶ 33-34. 47, 54, 58, 64.)

According to Mull, before imposing "any sanction," especially for a third party's conduct, the Department must comply with the due process requirements set forth in its regulations. (*Id.* ¶ 33.) Mull further avers that the Department-wide policy, DC-ADM 801, controls inmate discipline and cannot be superseded by SCI-Houtzdale's VRI policy. (*Id.* ¶¶ 42-45.) To the extent the Department contends the lockdown was necessary due to a state of emergency, Mull avers the Secretary did not declare a state of emergency and "every 3[-]man fight does not constitute a state of emergency." (*Id.* ¶ 49.) Mull grieved implementation of the policy, asserting Respondents lacked the authority to do so, but the grievances were denied. (*Id.* ¶¶ 31, 35-37 47-50, 52-54.)

In Count 1, Mull asserts Respondents' invocation of the VRI policy constitutes official oppression under Section 5301 of the Crimes Code, 18 Pa.C.S. § 5301. (Petition ¶ 69.) In Count 2, Mull claims the Facility Manager lacks authority under the Administrative Code of 1929 (Administrative Code)[6] to implement the VRI policy as it is inconsistent with the Department's statewide policy on inmate discipline found in DC-ADM 801, the Department's regulations, Section 5901 of

---

[5] The Petition contains two paragraphs numbered 55. This refers to the second paragraph 55.

[6] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51-732.

the Prisons and Parole Code, and precedent. (*Id.* ¶ 70.) In Count 3, he alleges Respondents' use of the VRI policy sanctions or punishes inmates for the conduct of third parties in violation of DC-ADM 801 and the Department's regulation, 37 Pa. Code § 93.10. (*Id.* ¶ 71.) In Count 4, Mull asserts the VRI policy violates Section 5901 of the Prisons and Parole Code by denying him his right to two hours of daily exercise. (*Id.* ¶ 72.) In Count 5, Mull avers the VRI policy is arbitrary or irrational and violates the Administrative Code and Department regulation 37 Pa. Code § 93.10(b) by depriving him of procedural due process. (*Id.* ¶¶ 73-74.) Lastly, in Count 6, Mull again asserts a claim of official oppression. (*Id.* ¶ 75.) In his prayer for relief, Mull requests various forms of declaratory and injunctive relief, along with compensatory and punitive damages.

Respondents filed POs to the initial petition for review, which were rendered moot after Mull sought, and the Court granted, leave to amend. In response to the amended pleading, Respondents filed new POs. Therein, Respondents assert Mull failed to comply with this Court's December 1, 2020 order granting Mull leave to file an amended pleading in that Mull did not serve all Respondents as directed. Respondents request Mull be required to serve the Petition or face dismissal of his action. In their second PO, Respondents assert demurrers to each of Mull's claims. As to counts 1 and 6, Respondents argue the Court cannot issue a criminal charge of official oppression. Count 2 also fails to state a claim, according to Respondents, because the Department is empowered to promulgate rules and regulations or enact policies related to the administration, management, and supervision of its prisons. Next the Department asserts Count 3 fails as this Court has already rejected an argument that the VRI policy constitutes punishment to trigger the requirements of 37 Pa. Code § 93.10 and DC-ADM 801. For similar reasons, Respondents assert

4

Count 4, which alleges a violation of 61 Pa.C.S. § 5901 (requiring two hours of exercise for inmates), fails, as this Court has previously rejected similar claims. Respondents argue that Count 5 should be dismissed as the VRI policy does not violate any due process principles.

In their third PO, Respondents assert Mull has not established personal involvement by Respondents; instead, Mull merely asserts, at most, involvement in the inmate grievance procedure, which is legally insufficient. Therefore, Respondents claim the Petition lacks specificity that would enable them to prepare a defense. In their fourth PO, Respondents contend the Department's regulations do not create a cause of action. Finally, Respondents argue that they are entitled to sovereign immunity on any state law claims.

## II.   DISCUSSION

We begin with Respondents' PO asserting demurrers as to each count of the Petition because, if sustained, it is unnecessary to reach Respondents' other POs.

### A.   <u>Demurrers as to Counts 1 and 6</u>

Respondents demur to Counts 1 and 6 of the Petition, which seek a determination that Respondents engaged in official oppression in violation of Section 5301 of the Crimes Code. Respondents assert the Court is without the authority to issue criminal charges. Mull responds that Respondents' actions are criminal acts and if this Court does not possess the authority to issue criminal charges for official oppression, it should transfer Counts 1 and 6 to the proper tribunal.

Section 5301 provides:

5

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

> (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

> (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

18 Pa.C.S. § 5301.

In *Tillman v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 327 M.D. 2016, filed June 9, 2017),[7] *aff'd per curiam*, 189 A.3d 423 (Pa. 2018), the petitioner alleged numerous Department officials committed official oppression while investigating the petitioner's complaint. The Department lodged a PO to this claim, which we sustained, concluding "th[e] Court cannot, sua sponte, issue criminal charges." *Id.*, slip op. at 9 (italicization omitted). Similarly, in *Barner v. Correctional Officer Pientka* (Pa. Cmwlth., No. 1679 C.D. 2016, filed June 12, 2017), slip op. at 4-5, we held that official oppression is a crime and there is no civil cause of action for it. *See also D'Errico v. DeFazio*, 763 A.2d 424, 429-30 (Pa. Super. 2000) (analyzing Section 5103 of the Judicial Code, 42 Pa.C.S. § 5103, and holding that "[w]hile [the] appellants may have a civil claim based on the same conduct the statute makes criminal, that claim does not lie pursuant to the statute").[8] Thus, even if we could charitably read Mull's Petition to ask for civil liability under Section 5103 of the Judicial Code, we would still have to reject that suggestion.

---

[7] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[8] In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

In the event the Court finds it was without the authority to address Counts 1 and 6 of his Petition, Mull asks the Court to transfer those counts to the tribunal that does. Section 5103 of the Judicial Code provides for transfers of erroneously filed matters. It provides in relevant part:

> If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper **tribunal** of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth. . . .

42 Pa.C.S. § 5103(a) (emphasis added). "[T]ribunal" is defined as "a court or magisterial district judge or **other judicial officer** of this Commonwealth vested with the power to enter an order in a matter[.]" 42 Pa.C.S. § 5103(d) (emphasis added).

To the extent Mull seeks to hold Respondents civilly liable for official oppression, as the Court held in *Barner*, slip op. at 4-5, and the Superior Court held in *D'Errico*, 763 A.2d at 430, there is no civil cause of action. Therefore, there is no tribunal to which such a matter could be transferred. To the extent Mull seeks to bring a private criminal complaint against Respondents, we likewise conclude there is no "tribunal" to which we could transfer the matter.

Rule 506 of the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 506, governs the process for approval of private complaints.[9] It provides:

_____

[9] Rule 504 of the Pennsylvania Rules of Criminal Procedure sets forth the requirements of all complaints, whether the affiant is a law enforcement officer or a private citizen, including that the complaint contain a verification by the affiant that the facts set forth in the complaint are true **(Footnote continued on next page…)**

7

(A) When the affiant is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay.

(B) If the attorney for the Commonwealth:

(1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;

(2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision.

*Id.*

While district attorneys are considered **quasi-judicial** officers, *Commonwealth ex rel. Specter v. Martin*, 232 A.2d 729, 736 (Pa. 1967), they are not judicial officers and, thus, not a "tribunal," for purposes of the transfer statute, 42 Pa.C.S. § 5103.[10] Therefore, we cannot transfer these claims under Section 5103 of the Judicial Code.

As we lack the ability to address Counts 1 and 6 of Mull's Petition, seeking to charge Respondents with official oppression, a criminal offense, we must sustain Respondents' demurrer to those counts.

---

and correct to the affiant's personal knowledge, information, or belief, and any false statements are subject to penalties for unsworn falsification to authorities. Pa.R.Crim.P. 504.

[10] Nor are district attorney offices considered judicial agencies under the Right-To-Know Law (RTKL), Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104. *Phila. Dist. Att'y's Off. v. Williams*, 207 A.3d 410, 412 n.4 (Pa. Cmwlth. 2019) (reasoning "[b]ecause 'judicial power is not vested in the [district attorney's] office,' it is not a judicial agency," which is defined as "[a] court of the Commonwealth or any other entity or office in the unified judicial system" (quoting *Miller v. County of Centre*, 135 A.3d 233, 236 (Pa. Cmwlth. 2016), and Section 102 of the RTKL, 65 P.S. § 67.102).

## B.     Demurrer as to Counts 2 through 5

Respondents also demur to Counts 2 through 5 of the Petition,[11] in which Mull alleges they lacked authority to implement the VRI policy on the bases it is inconsistent with Department policy, regulations, and state law, and results in a denial of due process.   Respondents dispute this contention, asserting the Department has the legal authority to implement such a policy, as it relates to the administration, management, and supervision of prisons, and noting this Court has rejected similar claims in the past.   Mull responds that while Respondents have the authority to make rules and regulations under the Administrative Code, they do not have the authority to institute the VRI policy as it is inconsistent with the law.[12]

Section 206 of the Administrative Code provides:   "[e]ach administrative department shall have as its head an officer who shall, either personally, by deputy, or by the duly authorized agent or employe of the department, . . . exercise the powers and perform the duties by law vested in and imposed upon the department." 71 P.S. § 66.[13]   Section 506 of the Administrative Code provides:

> The heads of all administrative departments . . . are hereby empowered to prescribe rules and regulations, **not inconsistent with law**, for the government of their respective departments . . . , the conduct of their employes and clerks, the distribution and performance of their business,

---

[11] Respondents separately address these Counts, but because of the overlap in analysis, the Court will address them together.

[12] Mull contends in his brief that Respondents are not demurring as to a conflict between the VRI policy and the Department's regulation at 37 Pa. Code § 93.10 or Section 5901 of the Prisons and Parole Code, based on a statement in Respondents' previously filed POs.  However, those POs were rendered moot by the amended filing.  Respondents have properly raised the arguments in the instant POs.  Moreover, we note that Respondents' original POs predated our decision in *Rokita*, which as discussed more fully herein, addressed many of the claims Mull makes herein.

[13] Section 206 identifies the Secretary of Corrections as the head of the Department.  71 P.S. § 66.

and the custody, use, and preservation of the records, books, documents, and property pertaining thereto.

71 P.S. § 186 (emphasis added). Further, Section 901-B of the Administrative Code provides:

> The Department . . . , which is hereby established as an administrative department, shall have the powers and duties granted to and imposed upon it by this article and by any other statutory provisions. In addition, the Department and Secretary of Corrections shall have all the powers and duties granted to and imposed upon the former Bureau and Commissioner of Correction prior to the effective date of this article and shall also have all the powers and duties formerly vested in and exercised by the General Counsel and the Office of General Counsel insofar as such powers and duties related to the administration, management and supervision of penal and correctional facilities, programs and services.

71 P.S. § 310-1.[14]

These provisions grant the Department authority to implement policies that relate to the administration, management, and supervision of its prisons, which the VRI policy does. Our inquiry does not end there, though. Rather, we must consider whether the VRI policy is "inconsistent with [the] law." 71 P.S. § 186. Mull asserts it is inconsistent with Department policy, DC-ADM 801,[15] the Department's

---

[14] Section 901-B was added by Section 4 of the Act of December 30, 1984, P.L. 1299.

[15] The most recent version of DC-ADM 801 is available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipline.pdf (last visited March 19, 2024).

10

regulation at 37 Pa. Code § 93.10, [16] and Section 5901 of the Prisons and Parole Code.[17]

This Court previously determined SCI-Houtzdale's VRI policy did not violate DC-ADM 801 or 37 Pa. Code § 93.10. In *Rokita v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 182 M.D. 2020, filed November 20, 2020), the petitioner filed a petition for review in our original jurisdiction challenging the VRI

---

[16] This regulation governs inmate discipline and provides, in relevant part:

(b) Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by the Department and disseminated to the inmate population:

(1) Written notice of charges.

(2) Hearing before an impartial hearing examiner or an informal resolution process for charges specified by the Department in the *Department of Corrections Inmate Handbook*, or any Department document that is disseminated to inmates. The informal resolution process is described in DC-ADM 801--Inmate Discipline. The process gives inmates the option to meet with staff to resolve a misconduct rather than proceed with a hearing.

(3) Opportunity for the inmate to tell his story and to present relevant evidence.

(4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.

(5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.

(6) Opportunities to appeal the misconduct decision in accordance with procedures in the *Department of Corrections Inmate Handbook*.

37 Pa. Code § 93.10(b).

[17] Section 5901(a)(1) provides, in pertinent part: "[a] chief administrator . . . in charge [of] any inmate . . . shall provide the inmate with at least two hours of daily physical exercise in the open, weather permitting, and, upon such days on which the weather is inclement, with two hours of daily physical exercise inside of the correctional institution." 61 Pa.C.S. § 5901(a)(1).

policy on various constitutional bases after being subject to a number of lockdowns for altercations in which the petitioner was not involved. Similar to Mull, the petitioner asserted the VRI policy was punitive in nature and the consequent lockdowns prevented him from communicating with family, showering, exercising, using the law library, and attending religious services.

In response to his assertion that he was being denied due process by the lockdowns, we held that the petitioner did not state a claim. In doing so, we explained:

> Such constraints on due process rights reflect the reality that "[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). This undertaking is impossible without adequate deterrence of and control over violence inside a prison's walls; as such, we must recognize that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). "Within this volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson*[ *v. Palmer*], 468 U.S. [517,] 526-27 [(1984)]; *accord Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' *Hudson* . . . , 468 U.S. at 526, . . . having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.").

> In light of the standard set forth in *Sandin*[ *v. Conner*, 515 U.S. 472 (1995)], as well as the inherently perilous security conditions found in prisons and the paramount interest in assuring internal institutional safety, we cannot deem the two lockdowns complained of by [the petitioner] to have "impose[d an] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." [*Id.*] at 484. Both lockdowns were implemented in response to violent altercations involving inmates, incidents that self-evidently required responses from

12

SCI-Houtzdale's staff members to ensure they maintained control over both the prison itself and the inmates housed there.

*Rokita*, slip op. at 12. We further noted that "the lockdowns did not punish [the petitioner], in the sense that they were not imposed as a penalty in response to some prohibited act he had perpetrated." *Id.* at 13 n.9. We find the reasoning of *Rokita* persuasive. Because the *Rokita* Court concluded the lockdowns pursuant to the VRI policy did not violate due process and were not punitive in nature, it necessarily follows that the VRI policy would not trigger either DC-ADM 801 or 37 Pa. Code § 93.10. Therefore, because the VRI policy is not inconsistent with DC-ADM 801 or the Department's regulation at 37 Pa. Code § 93.10, we conclude Mull did not state a claim on that basis.

Having concluded no constitutional violation occurred, we next turn to Section 5901(a)(1) of the Prisons and Parole Code, which provides an inmate is to be provided two hours of exercise, outside when weather permits and inside when it does not. 61 Pa.C.S. § 5901(a)(1).[18] This is not without restraint, however. The statute also provides "[t]he physical exercise must be safe and practical, and the judges of several courts are to be the judges thereof." 61 Pa.C.S. § 5901(a)(2).

Under Section 5901's predecessor statute,[19] we held "it [wa]s for this Court to

---

[18] The regulations set forth a similar requirement for county jails. 37 Pa. Code § 95.238(1).

[19] Section 1 of the Act of June 14, 1923, P.L. 775, *formerly* 61 P.S. § 101, commonly referred to as the Prison Exercise Act, was repealed by Section 11(b) of the Act of August 11, 2009, P.L. 147. It provided, in pertinent part:

> Every warden, board of prison managers, prison inspectors, or any other person in authority, in charge of any prison or penitentiary, who may or shall have in charge any person confined therein whether such person be a tried or untried prisoner, shall provide that such person shall have at least two hours daily, physical exercise in the open, weather permitting, and upon such days on which the weather is inclement, such person shall have two hours, daily, of physical exercise indoors of such prison

**(Footnote continued on next page…)**

13

decide, as **a matter of law**, whether it is safe and practical . . . ." *Shoats v. Owen*, 563 A.2d 963, 965 (Pa. Cmwlth. 1989) (emphasis added).

In *Buehl v. Beard*, we explained that a "Section 5901 proceeding [is] a unique statutory proceeding[,] . . . [t]he scope and limits of [which] are [] set by the legislature in Section 5901 . . . ." 54 A.3d 412, 417 (Pa. Cmwlth. 2012). The Court explained that the question of safety and practicality "is the only question subject to judicial review." *Id.* However, the Court continued,

> [i]t does not follow that a "safe and practical" review permits the courts to review each decision of the chief administrator with respect to physical exercise on a particular day. Indeed, it is well []established that prison administrators must be afforded wide-ranging deference in adopting and carrying out policies that in their reasonable judgment are necessary to preserve order, discipline, and security.

*Id.*

There, the petitioner alleged the Department regularly cancelled outdoor physical exercise by falsifying reports of inclement weather and then refused to provide indoor exercise when it did. *Id.* at 415. Consistent with the above principles, we held that "[r]evisiting a weather determination on a given day is beyond the Section 5901 'safe and practical' remedy." *Id.* at 418. In so concluding, we reasoned that "weather determinations require the exercise of discretion" and "[i]t is not for the courts to decide whether the weather is very inclement or slightly inclement." *Id.*

Although Section 5901 was not expressly addressed by *Rokita*, the petitioner in that case did aver he was denied the ability to exercise as a result of the VRI

---

or penitentiary: Provided, however, The same is safe and practical, and the judges of the several courts are to be the judges thereof.

*Id.*

14

policy, and, as discussed above, we ultimately held the petitioner there did not state a claim for constitutional violations. Instead, in sustaining the POs in that case, we concluded that the policy was necessary for prison officials to maintain control and security over the prison. *Rokita*, slip op. at 12. Consistent with that logic and with Section 5901(a)(2)'s requirement that the exercise be "safe and practical," which is within this Court's role to review, 61 Pa.C.S. § 5901(a)(2), Mull has not pled sufficient facts to show implementation of the VRI policy is not within the Department's purview of ensuring safety and practicality, particularly in light of its "wide-ranging deference," *Buehl*, 54 A.3d at 417. In his Petition, Mull admits the purpose of the VRI policy is "alleg[edly] to preserve order, discipline[,] and security of staff and inmates," (Petition ¶ 6), though he asserts it is also being used to punish inmates for the conduct of others, (*id.* ¶ 60). Therefore, we sustain Respondents' demurrer as it relates to Section 5901, as well.

Because the VRI policy is not inconsistent with the law, we sustain Respondents' PO in the nature of a demurrer to Counts 2 through 5.

## III. CONCLUSION

Based on the foregoing, the Court sustains Respondents' PO in the nature of a demurrer as to each count of Mull's Petition and dismiss Mull's Petition.[20]

_____
**RENÉE COHN JUBELIER,** President Judge

---

[20] Given our disposition, it is unnecessary to reach Respondents' remaining POs, which are dismissed as moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan Mull,                          :
              Petitioner       :
                           :
           v.                :      No. 675 M.D. 2019
                           :
John E. Wetzel, et al.,            :
              Respondents    :

## O R D E R

**NOW**, March 20, 2024, Respondents' preliminary objection (PO) in the nature of a demurrer as to each count of the Amended Petition for Review (Petition) filed by Ryan Mull is **SUSTAINED**, and the Petition is **DISMISSED.** The remaining POs are **DISMISSED AS MOOT.**

_____
**RENÉE COHN JUBELIRER,** President Judge